## COMMONWEALTH OF MASSACHUSETTS v. KLAUS.

(Supreme Court, Appellate Division, First Department.    July 7, 1911.)

1. APPEAL AND ERROR (§ 843*)—MOOT QUESTIONS—REVIEW.

   Appellate courts frequently pass upon questions affecting public interests, though the question has become moot in the particular case and the appellate division will determine whether the statute permitting. witnesses in this state to be subpœnaed to another state is constitutional,. the special term having decided that it was invalid.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3331–3341; Dec. Dig. § 843.*]

2. WITNESSES (§ 6*)—SUBPŒNAED TO ANOTHER STATE—CRIMINAL CASES.

   Code Cr. Proc. § 618a, added by Laws 1902, c. 94, provides that if a judge in any state bordering on this state which has heretofore provided: for commanding persons within its borders to attend and testify in criminal cases therein, certifies that there is a criminal action pending in such state, and a person residing or being within this state is a material and necessary witness therein, a judge of a court of record in this state upon proper proof, opportunity being given such witness to appear and' be heard in opposition to the subpœna, shall issue a subpœna commanding such witness to appear and testify in the court where such criminal action is pending, and if any person so served and tendered mileage and. witness' fees as provided, shall unreasonably neglect to attend and testify, he shall be punished as stated, provided that the laws of the other state gives to persons coming therein, under such subpœna, protection from the service of papers and arrest. *Held*, that the statute was not invalid for requiring a witness within this state to give evidence for use in courts of another state, this state having power to compel all citizens to give evidence in court.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 9; Dec. Dig.. § 6.*]

3. CONSTITUTIONAL LAW (§ 48*)—VALIDITY OF STATUTES—PRESUMPTIONS.

   Every statute is presumed to be valid, and will not be declared unconstitutional because novel or because the court may believe it to be opposed to natural justice.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

4. CONSTITUTIONAL LAW (§ 48*)—CONSTITUTIONALITY OF STATUTES.

   A statute is presumed constitutional until the specific provision of' federal or state Constitution which it infringes is pointed out.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

5. CONSTITUTIONAL LAW (§ 257*)—DUE PROCESS OF LAW.

   Code Cr. Proc. § 618a, added by Laws 1902, c. 94, does not deprive a proposed witness of his liberty without due process of law.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 746, 747; Dec. Dig. § 257.*]

6. CONSTITUTIONAL LAW (§ 206*)—PRIVILEGES AND IMMUNITIES.

   The statute is not unconstitutional as interfering with a right of free ingress or egress of citizens of the United States to the several states, the privileges and immunities clause of the federal Constitution only preventing a state from discriminating between a citizen of the United. States and a citizen of the state.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 625–648; Dec. Dig. § 206.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. WITNESSES (§ 6*)—SUBPŒNA TO ANOTHER STATE—CRIMINAL CASE—VALID-
ITY OF STATUTE.
    The statute is not invalid as having extraterritorial effect, as it acts
upon a proposed witness within New York while he is under the jurisdic-
tion of this state.
    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 9; Dec. Dig. §
6.*]
    Laughlin, J., dissenting.

Appeal from Special Term, New York County.

On motion by the People for an order for the issuance of a sub-
pœna requiring Rembrandt Peale to appear and testify in a criminal
prosecution pending in the Commonwealth of Massachusetts against
Maurice H. Klaus. From an order denying the motion, the People
appeal. Reversed.

See, also, 129 N. Y. Supp. 1117.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, CLARKE, and SCOTT, JJ.

Robert C. Taylor, for the People.

Francis X. Carmody and George A. McLaughlin, for respondent.

SCOTT, J. This is an appeal from an order of a justice sitting
at Special Term denying a motion to issue a subpœna requiring Rem-
brandt Peale, a person within the state to appear and testify in
a criminal action pending in the state of Massachusetts. The ap-
plication was made under section 618a of the Code of Criminal Proce-
dure, which was added to that Code by Laws 1902, c. 94, and which
reads as follows:

"If a judge of a court of record in any state bordering on this state which
by its laws has heretofore made provision for commanding persons within its
borders to attend and testify in criminal actions in this state, certifies under
the seal of such court that there is a criminal action pending in such court,
wherein the defendant is charged with a crime of the grade of a felony, and
that a person residing or being within this state is believed to be a material
and necessary witness in such action, a judge of a court of record in this
state, upon the presentation of such certificate and such proof of the materi-
ality and necessity of such witness as he may require, opportunity being
given such witness to appear before such judge and be heard in opposition
thereto, and upon request so to do by the clerk of the court issuing such cer-
tificate, shall issue and attach to such certificate a subpœna commanding such
witness to appear and testify in the court where such criminal action is pend-
ing at the time and place to be stated therein. If any person on whom such
subpœna has been served in the manner provided by this chapter, having
been tendered by the party asking for the subpœna the sum of ten cents for
each mile to be traveled to and from such court, and the sum of five dollars
for each day that his attendance is required, the number of days to be speci-
fied in the subpœna, shall unreasonably neglect to attend and testify at such
court, he shall be punished in the manner provided for the punishment of
disobedience of any other subpœna issued from a clerk, of a court of record
in this state, provided, however, that the laws of the state in which the trial
is to be held gives to persons coming in the state under such subpœna, pro-
tection from the service of papers and arrest."

The motion was denied, as we gather, for want of power arising
from the supposed invalidity of the provision for constitutional rea-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sons, the justice who made the order appealed from, as well as a justice to whom a former application had been made, following a decision of the Special Term in Matter of Commonwealth of Pennsylvania, 45 Misc. Rep. 46, 90 N. Y. Supp. 808. By the subpœna applied for, it was sought to procure the attendance of Peale in Massachusetts in September, 1910, and it may be that the criminal prosecution has already ended so that his attendance would now be useless.

[1] On this point the papers on appeal do not advise us, but even if such were the case we should deem it our duty to examine the question of the validity of the act because the Special Term decision already referred to will, unless overruled, probably serve to render the act nugatory. Appellate courts not infrequently pass upon questions affecting important public interests, even where in the particular case the question has become academic. People ex rel. Hummel v. Reardon, 186 N. Y. 164, 78 N. E. 860. The papers upon which the application for a subpœna was made seem to show that a case for its issuance was made out under the terms of the statute, and we do not understand that the refusal to issue the subpœna rested upon the ground that the case had not been brought within the statute. It is shown that Massachusetts has passed a similar though not identical statute being contained in the Revised Laws, §§ 12 and 13. So have Pennsylvania (see Matter of Commonwealth of Pennsylvania, supra), Vermont (P. S. c. 111, §§ 2280, 2281), Maine (Rev. St. c. 133, § 12), New Hampshire (Rev. St. c. 224, §§ 8, 9), and Rhode Island (Gen. Laws, c. 292, §§ 16–17). So if the Legislature of this state has in this instance passed an unconstitutional law, a number of other states have fallen into the same error. [2] There can be no doubt that it is a duty which every man owes to society to give evidence, when called upon to do so in a court of justice, with some few exceptions not relevant here. Wigmore on Evidence, vol. 3, § 2192; In re Board of Aldermen, 68 Misc. Rep. 478–481, 124 N. Y. Supp. 70. Such being the clear duty of the citizen it is beyond question that the state has the correlative power to compel him to perform that duty, a power which is universally recognized and is exercised every day. Nor is the duty to give evidence, or the power to compel it to be given limited to causes pending in the courts of the state. Witness our statutes under which persons within this state are required to give evidence in the form of depositions for use in other states. We may therefore consider it settled that it is not an objection to the statute under consideration that it requires a witness within this state to give evidence for use in the courts of a foreign state. So far as concerns civil causes this can be accomplished by means of depositions taken within this state. In criminal prosecutions however, in any state which bases its jurisprudence upon the common law, the defendant is entitled to be confronted with the witnesses against him, hence evidence taken in this state by deposition would be of no avail. People v. Bromwich, 200 N. Y. 385, 93 N. E. 933. Unless, therefore, there is power somewhere to compel a witness to proceed from one state to another to testify, many guilty persons must necessarily escape due punishment for their crimes, and it is manifest that if the power exists anywhere

it must be in the state within which the witness is, and where he can be served with the necessary order or subpœna. The question then resolves itself into one of power, and the only question is as to the power of the state to compel a witness to cross its boundaries and proceed into another state to perform there his plain duty to society. It is this power that the statute asserts, and which has caused the validity of the act to be called in question. It is a proposition not to be questioned that, except as limited by constitutional restrictions, state or federal, the state acting through the Legislature has absolute and unrestrained power over its own citizens and those who may be within its borders. This was clearly pointed out and demonstrated in Ware v. Hylton, 3 Dall. 199, 1 L. Ed. 568, which was decided in 1796. In Rhode Island v. Mass., decided in 1838, 12 Pet. 657, 720, 9 L. Ed. 1233, Judge Baldwin referred to the individual state as:

"Those states in their highest sovereign capacity, in the convention of the people thereof, on whom, by the Revolution, the prerogative of the Crown and the transcendent power of Parliament devolved, in a plenitude unimpaired. by any act, and controllable by no authority."

As was said in Livingston v. Moore, 7 Pet. 469, 546, 8 L. Ed. 751:

"The power existing in every body politic is an absolute despotism."

We take it to be well and clearly settled that, except as limited by the federal or state Constitution the power of the state over persons within its confines, whether citizens or strangers is absolute and plenary, and would extend even to banishment. In considering the validity of the act under consideration we are concerned only with the power of the state to enact it, and have nothing to do with the policy of the state in so enacting it. The question of comity therefore does not enter into our consideration because comity cannot confer power, but merely offers a reason for its exercise.

[3] It is a fundamental rule that a presumption of validity attaches to every statute of a state, and that such a statute is not to be lightly declared unconstitutional merely because it is novel, or because the court may be of opinion that it is opposed to natural justice and equity. People v. Gillson, 109 N. Y. 389–398, 17 N. E. 343, 4 Am. St. Rep. 465.

[4] The act under consideration is a state statute, and is presumed to be warranted by the Constitution until the objector has been able to point out the specific provision of either the federal Constitution or the state Constitution with which it is incompatible. Black's Const. Law (3d Ed.) Hornbook Series, § 17, pp. 35–36. [5] It was suggested by the learned justice who wrote in Matter of Commonwealth of Pennsylvania, supra, that the enforcement of the act "would deprive the proposed witness of his liberty without due process of law." This objection we think is untenable. Any witness subpœnaed to attend a trial within the state is in the same sense deprived of his liberty, but we have never heard it suggested that the provisions of law providing for the summoning of witnesses and for enforcing their attendance were unconstitutional and void. In fact under the act we are considering the proposed witness is afforded more protection in the way of

·due process than is a witness summoned to testify within the state for he must be given notice and an opportunity to be heard before a subpœna can be issued, and in addition is assured of ample indemnity for expenses, and immunity from the service of process while in the foreign state. This would seem to be due process of law in a very real sense.

[6] It is suggested by the respondent that the act contravenes the right of free ingress and egress of all citizens of the United States to the several states as secured by the federal Constitution. It is conceded upon the brief, however, and the concession is a complete answer to the charge of unconstitutionality upon this head, that the right of free ingress and egress was never intended to enable a citizen of the United States to interfere with the orderly administration of justice within the territorial boundaries of the state, and that, as has been repeatedly held, when a citizen of the United States is within the boundaries of a state he is amenable to the constitutional laws of that state, and that the only protection which the privileges and immunities clause of the federal Constitution affords him there is that no state Legislature shall discriminate between him and the citizens of the state proper. For this there is ample authority. Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394; Blake v. McClung, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432. This objection does not affect the act we are now considering, even if the proposed witness be (as respondent claims to be) a nonresident temporarily present in the state, for it applies impartially to persons "residing or being" within the state.

[7] Finally, it is objected that neither the statutes of the state nor the orders of the courts have any extraterritorial effect, and hence that a person cannot be compelled to act or ordered to do any act without the boundaries of the state. The argument involves a non sequitur. The state does not undertake to impart extraterritoriality to its statute. It acts upon the proposed witness here, within the state, while he is under its jurisdiction. It is quite immaterial what it requires him to do or where it requires him to do it, provided its power to direct his movements has not been restricted by a paramount law. We have considered all the legal objections which have been suggested to the act under discussion, and have been unable to find that it violates any provision of either the state or federal Constitutions. As has been said we are not concerned with the policy of the state in ·enacting the law, but we may say, to avoid misconstruction, that in our view the act is one calculated to promote the ends of justice, and that there is no greater hardship in compelling a witness to travel from this state into an adjoining one, than is involved in compelling him to travel from one end of the state to the other. It follows that the justice at Special Term had power to entertain and grant the application. The act contemplates that the subpœna, if issued, shall be issued by a justice and not by the court. We shall therefore content ourselves with reversing the order appealed from, remitting the application to the Special Term to be acted upon by the justice sitting there.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting).   The provisions of section 618a of the Code of Criminal Procedure, quoted in the opinion of Mr. Justice SCOTT and under which the application was made to the Special Term for a subpœna, commanding one Rembrandt Peale, found within the state, but a citizen and resident of Pennsylvania, the respondent, to leave the state and appear at Boston as a witness in a criminal prosecution pending in the state of Massachusetts, apply not only to the citizens of this state, but to all residents and to all persons within the state, whether citizens, residents, or not.   I have grave doubt upon several grounds whether the statute is constitutional, even as applied to citizens and residents of the state, and I deem it clearly unconstitutional and void in so far as it applies to nonresidents of the state.

The attempt on the part of the state Legislature, in enacting these statutory provisions, to aid in the administration of justice in other states in particular instances, is not general, but is limited to those states only bordering on our state and which have enacted similar laws. It is not entirely clear that the law of Massachusetts on this subject is sufficiently similar to our statute to give that commonwealth the benefit of its provisions, for the statute of Massachusetts on this subject applies only to *residents* of that state (2 Revised Laws of Massachusetts, c. 175, §§ 12, 13, p. 1576); and, moreover, it does not appear that the laws of Massachusetts give a witness, who comes into the state under such a subpœna as is authorized to be issued pursuant to the provisions of said section 618a of the Code of Criminal Procedure, protection from the service of papers and arrest while within that state, as is required by said section.   The order might well be sustained upon either of those grounds; but I agree with my Associates that the question is of sufficient public importance to require an expression of our views with respect to the constitutionality of the statute.

The Legislature, in enacting this statute, has attempted in effect to make an unsigned treaty with certain states with respect to the surrender and delivery over of persons found within its borders who are needed as witnesses in criminal prosecutions in the other states which have enacted similar statutes for the surrender of persons found there and needed for like purposes in this state.   See Holmes v. Jennison, 39 U. S. 538, 553, 10 L. Ed. 579, 618; Ex parte Holmes, 12 Vt. 631–640.   I am inclined to the view that it violates the provisions of subdivisions 1 and 2 of section 10 of article 1 of the federal Constitution, which prohibits any state from entering "into any treaty, alliance or confederation," and from entering "into any agreement or *compact* with another state, or with a foreign power," without the consent of the Congress.   It is not claimed that the consent of Congress has been obtained.   If a state may enact such legislation with respect to a border state, the agreement or compact may be extended to every state and territory of the Union, and to every foreign country as well. Under it a citizen, resident or sojourner within the state, including one passing through the state, bound perhaps on a long journey, may be summoned before a judge of a court of record and required, under a subpœna to be issued by the judge, to attend as a witness in another

state, leaving his family and his business for such length of time as the judge may see fit to prescribe, under pain of being punished here as for a contempt of court.  These provisions of the federal Constitution do not prohibit the settlement of trivial boundary disputes between the states, not involving or materially affecting their political status and duties to the government, or other agreements which do not affect the federal government or its citizens (Virginia v. Tennessee, 148 U. S. 503, 13 Sup. Ct. 728, 37 L. Ed. 537); but they do, I think, prohibit an encroachment on the authority conferred upon the federal government to make treaties, and prohibit any treaty, compact or agreement, express or implied, which interferes with any privilege or immunity of a citizen of the United States, and prohibit one state . from surrendering to another state or country any fugitive from justice, save in compliance with the extradition provisions of the federal Constitution.  It has been held that the surrender by a state of a fugitive of justice from a foreign country necessarily involves a reciprocal agreement for a similar surrender under like circumstances, and is forbidden by these provisions of the federal Constitution (Holmes v. Jennison, 39 U. S. 538, 10 L. Ed. 579, 618; Ex parte Holmes, 12 Vt. 631).  In People ex rel. Barlow v. Curtis, 50 N. Y. 321, 10 Am. Rep. 483, a statute of this state providing for the surrender of fugitives of justice from a foreign country was held unconstitutional and void for the same reason.  These decisions were cited with approval in U. S. v. Rauscher, 119 U. S. 407, 7 Sup. Ct. 234, 30 L. Ed. 425, wherein it was held that a state desiring as a fugitive from justice a person who is in a foreign country must apply through the State Department of the United States government, whose jurisdiction was exclusive.  There is no difference in the phraseology between the prohibition on the part of a state to enter into a treaty, compact, or agreement with a foreign nation and with a sister state. Here, by the express terms of the statute, a reciprocal agreement on the part of the sister state, in the form of legislation, is required as a condition upon which the statute shall be operative.

I also think that the statute violates the fourteenth amendment to the federal Constitution, in that it deprives the citizen of another state and of the United States, sojourning within this state, of his liberty without due process of law.  There has been an attempt to comply with the constitutional requirement in this regard, but there has been a compliance only in form.  The hearing is only with respect to whether the person summoned is required as a witness in the sister state. He can make no defense to the application.  It was a fundamental rule of international and public law, before the adoption of the fourteenth amendment to the federal Constitution, that due process of law required not only notice and a hearing, or an opportunity to be heard, but that the adjudication should be by a court of competent jurisdiction, and that the process of a court can have no extraterritorial effect.  7 Am. & Eng. Ency. of Law and Practice (2d Ed.) 36; Pennoyer v. Neff, 95 U. S. 733, 24 L. Ed. 565; La Fayette Ins. Co. v. French, 18 How. 404, 15 L. Ed. 451; McGehee on Due Process of Law, 85, 87, 89, 90, and 92; Sugg v. Thornton, 132 U. S. 524,

10 Sup. Ct. 163, 33 L. Ed. 447. As well might the Legislature have commanded any person, on notice that his attendance in an adjoining state is required, and on payment of his traveling expenses, to leave the state and comply with the request or suffer a penalty. The mere fact that the formality of appearing before a *judge* is required does not materially change the situation, for it has been attempted to confer authority on a judge of this state to issue a subpœna against a person produced before him within this state, commanding such person to leave the state and attend as a witness before a court in a state, within the territorial limits of which neither the Legislature nor the judge of this state has any jurisdiction. The attempt to confer authority on the judge to punish a failure to comply with such a subpœna as for a contempt of court is without authority. There can be no contempt of a court, except it be a failure to do something that the court has authority to require to be done, and it must be with respect to the administration of the law within this state.

Moreover, I am of opinion that the statute constitutes an infringement on the rights of a person desired as a witness, in that by being commanded to enter another state he may be there seized and held for a crime, for which he could not have been extradited under the provisions of subdivision 2 of section 2 of article 4 of the federal Constitution, and civil process may be served upon him. Even if it appeared that the state of Massachusetts had enacted a law by which the witness would be free from arrest and from service of civil process, there is no guaranty that the law would continue, and I know of no remedy by which the witness could enforce compliance therewith (Ker v. Ill., 119 U. S. 436, 7 Sup. Ct. 225, 30 L. Ed. 421; Mahon v. Justice, 127 U. S. 700, 8 Sup. Ct. 1204, 32 L. Ed. 283; Lascelles v. Georgia, 148 U. S. 537, 13 Sup. Ct. 687, 37 L. Ed. 549), for, as already observed, the states are forbidden to make treaties, compacts, or agreements, and no court could protect rights attempted to be guaranteed under such a statute, unless the court of the state desiring the testimony saw fit to protect the witness thereunder. The person sought as a witness, while in the exercise of his right to be and remain within this state, was secure against the service of process in a civil action in Massachusetts which could bind him personally or his property not brought within the jurisdiction of the court by attachment or similar process. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565.

It is not, however, on this application, essential to decide whether it is competent for the Legislature to enact such a statute with respect to citizens of the state, nor is it necessary to express an opinion as to whether this statute can be sustained as applicable to such citizens if it be void in its application to nonresidents. The person sought as a witness is a resident of the state of Pennsylvania. It has been held in some cases that a foreign country or state may enact a law regulating the conduct of its citizens when abroad and punish them for disobedience (Wheaton on International Law [4th Ed.] §§ 111-114; Van Voorhis et al. v. Brintnall et al., 86 N. Y. 18, 40 Am. Rep. 505; Thorp v. Thorp, 90 N. Y. 602, 43 Am. Rep. 189; People v. Merrill, 2 Parker's Cr. R 590, 599, 601. But see People v. Mosher,

2 Parker's Cr. R. 195); but it is quite plain, I think, that no state can exercise such jurisdiction with respect to residents of another state, and that is recognized in all of the decisions which I have cited. See, also, Pennoyer v. Neff, 95 U. S. 714–723, 24 L. Ed. 565; Story on Conflict of Laws (8th Ed.) 539–544.

The fourteenth amendment to the federal Constitution provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." The same section declares that all persons born or naturalized in and subject to the jurisdiction of the United States are citizens thereof and of the state in which they reside. The privileges and immunities of citizens of the United States are neither clearly enumerated nor defined by the federal Constitution, nor have the courts ventured to give a comprehensive definition thereof. McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248. The policy of the federal courts appears to be to refrain from attempting a definition of such privileges and immunities, the same as they refrain from giving a comprehensive definition of due process of law, and to pass upon the facts of each case as the questions are presented for decision. McCready v. Virginia, supra; Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552. The federal courts have, however, in discussing what are embraced within the privileges and immunities of citizens of the United States, stated that those privileges and immunities embrace, among other things, the right of engaging in interstate business, of going from one state to another and there engaging in business, of stopping in any state for business or for pleasure, of taking up a residence therein and of becoming a citizen thereof, and of passing through any state without stopping. Ward v. Maryland, 79 U. S. 418–430, 20 L. Ed. 449; Corfield v. Coryell, 4 Wash. C. C. 380, Fed. Cas. No. 3,230; Crandall v. Nevada, 6 Wall. 35, 18 L. Ed. 745; Slaughterhouse Cases, 83 U. S. 36–79, 21 L. Ed. 394; Brannon on the Fourteenth Amendment, 66. In the Slaughterhouse Cases it was stated by the court that section 2 of the fourth article of the federal Constitution, which provides that "the citizens of each state shall be entitled to all the privileges and immunities of the citizens in the several states," was intended to preserve the rights declared in article fourth of the Articles of Confederation, wherein it was declared that every free citizen of any state shall be entitled to all the privileges and immunities of free citizens in the several states, "and the people of each state shall have free ingress and regress to and from any other state and shall enjoy therein all the privileges of trade and commerce, subject to the same duties, impositions and restrictions as the inhabitants thereof respectively." These rights are, of course, subject to the police power of the state, with respect to regulations for inspection and exclusion in the interests of the public health, morals, and welfare, which, however, must not encroach on the authority of Congress, by treaty and otherwise, to regulate immigration and international and interstate commerce. Brannon on the Fourteenth Amendment, 176; Mayor v. Miln, 36 U. S. 102, 9 L. Ed. 648; Passenger Cases, 48 U. S. 283, 12 L. Ed. 702; Henderson v. New York, 92 U. S. 259, 23 L. Ed. 543. The police power of the

state has no bearing on the question under consideration, for no charge is made against Peale personally. The right of the state to summon before its courts, in the administration of the public justice of the state, persons found within the state, whether citizens, residents, or nonresidents, is quite clear, as is also the right, in the interest of comity between states and nations, to provide for the taking of testimony within the state for use without the state, and these rights are exercised by all sovereign states and countries. The right, however, attempted to be conferred by this statute, is quite different. It is to compel one to leave the state, whom the state could not prevent from entering, and then to punish him for his failure to do something beyond the jurisdiction of the state and of the judge whom it is attempted to authorize to inflict the punishment. The statute is in conflict, I think, with the right of a nonresident to enter and remain within the borders of the state. While within the state, he is subject, of course, as are the citizens and residents of the state, to the laws of the state regulating his conduct; but even though the state may compel its own citizens to leave the state temporarily, and punish them for their failure to testify in another state, it does not follow that it may likewise compel a nonresident to depart from the state and punish him for doing or omitting to do something beyond the borders of the state. If this be competent legislation as against a nonresident, then the Legislature could also enact a law requiring citizens, residents, and nonresidents to cross the border to enable a sister state or foreign country to obtain jurisdiction over them for any purpose. The authority of a court of equity in the administration of justice between parties over whom it has jurisdiction to punish as for a contempt the refusal or failure on the part of one party to execute *within the state* a transfer or conveyance of property without the state (Watkins v. Holman, 41 U. S. 23, 10 L. Ed. 873; Cole v. Cunningham, 133 U. S. 107–116, 10 Sup. Ct. 269, 33 L. Ed. 538; Massie v. Watts, 6 Cranch, 148, 3 L. Ed. 181. Pennoyer v. Neff, supra) is clearly not analogous to the authority here conferred. I am therefore of opinion that the statute violates the provision of the federal Constitution prohibiting the states from enacting any law abridging the privileges and immunities of citizens of the United States.

The statute cannot be sustained upon the ground that it is necessary to the administration of justice and that therefore the Legislature must be deemed authorized to enact it. There is no necessity for such a law with respect to either civil or criminal cases, for, unless a state sees fit to limit itself by its Constitution or its laws, there is no guaranty in the federal Constitution that a person charged with crime must be confronted with the witnesses (People v. Fish, 125 N. Y. 136, 26 N. E. 319; People v. Bromwich, 135 App. Div. 67, 119 N. Y. Supp. 833, affirmed 200 N. Y. 385, 93 N. E. 933); but of course with the necessity for the enactment of the law we are not concerned.

I therefore dissent from the reversal of the order.