### DOVE et al. v. OGLESBY.

No. 17074—Opinion Filed March 16, 1926.

(Syllabus.)

**1. Elections — Preferential Primary Law Provisions.**

Section 1, chap. 29, S. L. 1925, provides, in effect, that, in order that a voter may have his vote counted, he must designate his first and second choice of candidates, where there are as many as three, or four candidates for the same office, and designate his first, second, and third choice, where there are more than four candidates for the same office, and that, unless he shall so designate, his ballot for his own choice shall not be counted.

**2. Elections—Constitutional Guaranty.**

Section 7, art. 3, of the Constitution provides that elections "shall be free and equal"; that "no power, civil or military shall ever interfere to prevent the free exercise of the right of suffrage."

**3. Same—Constitutional Provision Applicable to Primary Elections.**

Under our scheme or plan for holding elections and exercising the right of suffrage as provided in article 3 of the Constitution, primary elections are made a component element of the right of suffrage. They are made a necessary prerequisite to a general or final election, and the free exercise of the right of suffrage is just as necessary in primary elections as in general elections, and hence, the provisions in section 7, art. 3. of the Constitution apply in primary elections the same as in general elections.

**4. Same—Preferential Primary Law Unconstitutional.**

The obligations and restrictions imposed upon a voter by section 1 of chap. 29, S. L. 1925, constitute a material interference with that constitutional guaranty in section 7, art. 3, supra, that no power shall ever interfere to prevent the free exercise of the right of suffrage.

**5. Elections—Constitutional Right of Suffrage.**

While the right of suffrage does not inhere in the mere right to live or to exist, yet it does inhere in the right of self-government, and the free exercise of such right is essential to the maintenance of self-government.

**6. Appeal and Error—Moot Questions—Retention of Jurisdiction to Decide Constitutionality of Election Law.**

Although the time may have passed for granting the specific relief asked for in this case, yet, inasmuch as the constitutionality of a statute is involved, and the general public thereby interested, the court will retain jurisdiction of the appeal and pass upon the constitutionality of the statute.

Error from District Court, Carter County; W. F. Freeman, Judge.

Injunction by U. S. Oglesby against Mrs. Clint Dove and others, constituting the election board of Carter County. Judgment for plaintiff, and defendants bring error. Affirmed.

Geo. F. Short, Atty. Gen., Randell S. Cobb, Asst. Atty. Gen., and F. M. Dudley, Co. Atty. of Carter County, for plaintiff in error.

Kirby Fitzpatrick, for defendant in error.

HARRISON, J. This appeal is to reverse an order of the district court, enjoining the county election board of Carter county from holding a primary election under chapter 29, S. L. 1925.

The one question presented in the case is the constitutionality of said statute. The provisions to which objection is made are those in section 1 of the act, which provide that, in order that a voter may have his vote counted he must designate his first and second choice of candidates where there are as many as three or four candidates for the same office, and designate his first, second, and third choice where there are more than four candidates for the same office, and that, unless he shall so designate, his ballot for his own choice shall not be counted.

The trial court held these provisions to be violative of section 7, art. 3 of the Constitution, which is as follows:

"The election shall be free and equal. No power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage, and electors shall, in all cases, except for treason, felony and breach of the peace, be privileged from arrest during their attendance on elections and while going to and from the same."

Section 1 of said chapter 29 is as follows:

"That, at all primary elections, each voter in voting shall designate his choice or choices of candidates for nomination to each office as follows: If there be either one or two candidates for nomination to any one office, said voter shall vote for one candidate, designating his choice by stamping or marking an 'X' in the first choice column opposite the name of the candidate of his choice; if there be either three or four candidates for nomination to any one office, said voter shall vote for two candidates, designating his first choice by stamping or marking an "X" in the first choice column opposite the name of the candidate of his first choice and designating his second choice by stamping or marking an 'X' in the second choice column opposite the name of the candidate of his second choice; and, if there be more than four candidates for nomination to any one office, said voter shall vote for three candidates, designating his first and second choices as herein set out in case of either three or four candidates, and designating his third choice by stamping or marking an 'X' in the third choice column opposite the name of the candidate of his third choice. Where more than one candidate is to be nominated to any one office, said voter shall vote for as many candidates on each choice as there are candidates to be nominated to said office. Unless said voter designates the required choices for candidates for nomination to any one office. and designates the same for different candidates therefor. and votes for the required number of candidates for nomination to said office. said ballot shall not be counted for any candidate for nomination to said office."

The question, then, is whether the foregoing statute imposes obligations or restrictions upon a voter which interfere with or prevent the free exercise of his right of suffrage. In determining this question, it must be borne in mind that, under said article 3 of the Constitution, primary elections are made a component element of the right of suffrage. The article deals exclusively with the question of suffrage, and primary elections are made a necessary prerequisite to a general or final election, hence the free exercise of the right of suffrage is just as necessary and is intended to be just as sacredly guarded in primary elections as in general elections, and therefore the provisions in section 7, supra, apply in primary elections to

the same extent as in general elections. The Constitution makes no distinction.

Section 5 of said article 3 provides:

"The Legislature shall enact laws providing for a mandatory primary system. * * *"

Section 6 provides:

"In all elections by the people the vote shall be by ballot, and the Legislature shall provide the kind of ticket or ballot to be used and make all such other regulations as may be necessary to detect and punish fraud, and preserve the purity of the ballot. * * *"

Section 7 provides:

"That no power, civil or military, shall interfere to prevent the free exercise of the right of suffrage."

Therefore the cases cited by plaintiff in error wherein preferential primary laws have been involved, though sustaining preferential primary elections under the conditions presented, have dealt with different situations from the exact one presented here, and are not controlling.

We have our own peculiar suffrage system, written into our basic law with great care and in plain English, therefore the decisions of other jurisdictions based upon dissimilar systems render us little, if any, benefit in determining the plain meaning of our own laws, or in deciding when our constitutional rights are violated. The language of our Constitution explains itself; it is plain, unambiguous, and intended to have but one meaning. Likewise the statute in question has a plain, clear meaning. It has the undeniable effect of saying to a voter that, unless you vote for one or two who are not your choice, then the vote of the one who is your choice shall not be counted. In other words, you shall not vote at all, unless you vote for one or two who may be wholly objectionable.

These restrictions cannot be harmonized with the above constitutional guaranties that "No power shall ever interfere to prevent the free exercise of the right of suffrage. * * *"

We are not unmindful of the fact that it has been held that the right of suffrage is not an inherent right. This to a limited extent is true. The right of suffrage is not inherent in the mere right to live or to exist, but it does inhere in the right of self-government. Man may live without any government, and in such state has no inherent right of suffrage: but when he undertakes self-government, then the right of suffrage does inhere and the free exercise of such right is essential to the maintenance of self-government.

It is true that regulation of the manner of voting is necessary in order to preserve the purity of the ballot, but regulation of the manner of voting is distinct from the right to vote for whom we please. In the adoption of our Constitution, the people of the state guaranteed to each other the free exercise of the right of suffrage and agreed among each other that no power should ever interfere with the free exercise of such right. When a voter is compelled to vote for someone he does not want in order to have his vote counted for the one whom he does want, then the free exercise of his right of suffrage is materially interfered with, and the effect is just the same whether such interference comes from a provision of statute or from the point of the bayonet.

The Constitution says, "No power shall ever interfere." It might be well to say, in this connection, that we perceive no constitutional objection to a preferential primary law, provided it does not violate constitutional rights, but the vice in the act in question lies in the fact that the voter is compelled to vote for some one whom he may not want in order to have his vote counted for the one he does want.

There is one other question which under the peculiar circumstances of this case naturally presents itself, viz., whether the question involved here has become moot, but this is essentially a public question, one which involves the validity of a statute, and the question whether a constitutional right is being taken away and is a question which is quite likely to arise at any primary election.

Under the principles recognized and adopted by the Supreme Court of the United States, such questions do not become moot. See Giles v. Harris, 189 U. S. 484; also Memphis St. Ry. Co. v. Rapid Transit Co. (Tenn.) 179 S. W. 635; State ex rel. R. R. Com'rs v. Southern Tel. & Con. Co. (Fla.) 61 South. 119; In re Fairchild (N. Y.) 45 N. E. 943; ommonwealth of Mass v. Klaus, 130 N. Y. Supp. 713.

" In Memphis St. Ry. Co. v. Rapid Transit Co., supra, the Supreme Court of Tennessee said:

"The Supreme Court on appeal has jurisdiction and will determine the constitutionality of a law although the cause can be decided upon other grounds."

In State ex rel. R. R. Com'rs v. Southern Tel. & Con. Co., supra, the Supreme Court of Florida said:

"Even though litigation may not be effective in all respects because of circumstances arising after appellate proceedings are taken, the appellate court does not thereby lose jurisdiction of the cause, and it may be retained for the determination of questions properly presented involving the duties and authority of public officials that are of general interest to the public."

In Re Fairchild, supra, the Court of Appeals of New York said:

"The respondent contends that, inasmuch as the election has been held, the decision of the questions presented on this appeal is of no importance, as it can, at most, only affect the question of costs. We think the questions involved are of sufficient importance to require their determination by this court, as it may prevent future embarrassment in the congressional district to which this controversy relates, and also settle other questions upon which there is a conflict in the decisions of the Supreme Court."

In Commonwealth of Mass. v. Klaus, supra, the court said:

"Appellate courts frequently pass upon questions affecting public interests, though the question has become moot in the particular case, and the appellate division will determine whether the statute permitting witnesses in this state to be subpoenaed to another state is constitutional, the special term having decided that it was invalid."

In Giles v. Harris, supra, the Supreme Court of the United States said:

"Perhaps it should be added to the foregoing statement that the bill was filed in September, 1902, and alleged the plaintiff's desire to vote at an election coming off in November. This election has gone by, so that it is impossible to give specific relief with regard to that. But we are not prepared to dismiss the bill or the appeal on that ground, because to be enabled to cast a vote in that election is not, as in Mills v. Green, 159 U. S. 651, 657, the whole object of the bill. It is not even the principal object of the relief sought by the plaintiff. The principal object of that is to obtain the permanent advantages of registration as of a date before 1903."

We therefore entertain jurisdiction, and because of the public interest involved, pass upon the constitutionality of the statute.

Having reached the conclusions heretofore indicated, the judgment of the trial court is affirmed.

All the Justices concur, except BRANSON, J., not participating.

HUNT, J. In my opinion the act in question is unconstitutional only in so far as it undertakes to make it mandatory upon the voter to express a second choice when three or more candidates are running for a given office and a second and third choice when more than four candidates are running for a given office in order to have his vote counted. This provision being the last paragraph of section 1 of the act, is in conflict with that part of the Constitution providing for the free exercise of the ballot, and therefore unconstitutional and void. With this paragraph eliminated, the voter would be left free to express a second or third choice only in the event he desired to do so. The remainder of the act in no way conflicts with the Constitution, and is therefore valid and binding.

It was clearly the intention of the Legislature as expressed by the act to provide for a preferential primary and thus, so far as possible, insure nominations by a majority rather than a minority of the voters, and it will always be presumed that the intention of the Legislature was to keep within the provisions of the Constitution and that portion of the act which does not conflict with the Constitution should therefore be upheld, and full force given to the legislative intent to provide a preferential primary law within the provisions of the Constitution.

I, therefore, concur in the majority opinion only to the extent herein indicated.

I am authorized to state that MASON and RILEY, JJ., concur in the views herein expressed.