39 N.J. Super. 33 (1956)
120 A.2d 504
IN THE MATTER OF THE APPLICATION OF WATERFRONT COMMISSION OF NEW YORK HARBOR TO PUNISH FOR FAILURE TO OBEY A SUBPOENA FRANK MURRAY AND JAMES CALABRESE.
Superior Court of New Jersey, Law Division.
Decided February 3, 1956.
*36 Mr. Milton Rosenkranz, attorney for Waterfront Commission of New York Harbor (Mr. Irving Slonim, Mr. Eric Nightingale, and Mr. Daniel B. Berkson, of the New York Bar, of counsel).
Mr. James F. McGovern, Jr., attorney for defendants (Mr. Louis P. Caroselli, of counsel).
PROCTOR, J.S.C.
This is a motion pursuant to R.R. 4:46-5(c) for an order to punish each of the defendants as for a contempt of court for failure to obey a subpoena issued by the Waterfront Commission of New York Harbor.
The commission is a body corporate and politic, an instrumentality of the States of New Jersey and New York, created by L. 1953, cc. 202, 203; L. 1954, c. 14; N.J.S.A. 32:23-1 et seq; N.Y. Laws 1953, cc. 882, 883, McK. Unconsol. Laws, sec. 6700-aa, et seq., which laws are known as "The Waterfront Compact." The Compact between the states received the consent of Congress. U.S. Public Laws 252, c. 407, 83rd Congress, 1st Session, 67 Stat. 541.
The Compact resulted from findings by the States of New Jersey and New York that conditions under which waterfront labor is employed within the Port of New York District *37 are depressing and degrading to such labor and an inducement to criminal and corrupt practices and, hence, detrimental to the public safety and economic welfare of the people of both states. It is clear that in the formation of the Compact the lawmakers intended to deal with joint problems existing throughout a single port area situated partly in one and partly in the other state and not with separate problems in separate ports in each state. Consequently, there was established a single bi-state agency to administer the joint legislative program throughout the Port of New York District embracing the New Jersey-New York waterfront. The Compact contains a series of measures designed to eliminate the conditions mentioned above and grants to the Waterfront Commission created therein, among other things, investigatory and subpoena powers and the right to administer oaths. (Article IV, sec. 8, 11; Article XI, secs. 3, 5 (N.J.S.A. 32:23-10 (8, 11)); (N.J.S.A. 32:23 (47. 49)). The Compact also empowers the Commission to issue and revoke licenses of stevedores, pier superintendents, hiring agents, longshoremen and port watchmen; (Articles V, VI, VIII, X) (N.J.S.A. 32:23-12 et seq., 32:23-19 et seq., 32:23-27 et seq., 32:23-39 et seq.); to oversee hiring practices (Article XII) (N.J.S.A. 32:23-52 et seq.); to promulgate rules and regulations (Article IV, sec. 7 (N.J.S.A. 32:23-10(7)).
Article IV of the Compact, which empowers the Commission to conduct investigations, provides in part:
"In addition to the powers and duties elsewhere prescribed in this compact, the commission shall have the power * * *
11. To make investigations, collect and compile information concerning waterfront practices generally within the port of New York district and upon all matters relating to the accomplishment of the objectives of this compact * * *." (N.J.S.A. 32:23-10(11)).
The Commission is authorized to issue subpoenas by Article IV, sec. 8 (N.J.S.A. 32:23-10(8)), which provides that the Commission shall have the power:
"8. By its members and its properly designated officers, agents and employees, to administer oaths and issue subpoenas throughout both *38 States to compel the attendance of witnesses and the giving of testimony and the production of other evidence; * * *."
In connection with determinations to grant or to revoke or suspend licenses or registrations the Commission is authorized to hold hearings and issue subpoenas. Article XI (N.J.S.A. 32:23-45 et seq.), and N.J.S.A. 32:23-49 provides:
"The commission, or such member, officer, employee or agent of the commission as may be designated by the commission for such purpose, shall have the power to issue subpoenas throughout both States to compel the attendance of witnesses and the giving of testimony or production of other evidence and to administer oaths in connection with any such hearing. It shall be the duty of the commission or of any such member, officer, employee or agent of the commission designated by the commission for such purpose to issue subpoenas at the request of and upon behalf of the licensee, registrant or applicant. * * *"
The statute provides that the Compact is to be liberally construed to effectuate its purposes. (N.J.S.A. 32:23-72)
Failure to obey a subpoena issued by the Commission is punishable upon application to the Superior Court of New Jersey and the Supreme Court of New York in the same manner as said failure is punishable by such court in a case therein pending. Article XIV (N.J.S.A. 32:23-62). Under the New Jersey Court Rules (R.R. 4:46-5(c)), failure to obey a subpoena issued by a public agency under a statute shall be punishable in the same manner as if the subpoena were issued out of the court.
The undisputed facts establish that the Waterfront Commission commenced an investigation in furtherance of the objectives of the Compact and issued subpoenas which were duly served on each of the defendants in the City of Jersey City, State of New Jersey, on September 20, 1955, commanding them to appear at the office of the Waterfront Commission at 15 Park Row, New York City, State of New York, on September 22, 1955. On September 21, 1955 each of the defendants wrote a letter to the Waterfront Commission informing it that he would not appear in the City of New *39 York in response to the subpoena, but expressed a willingness to respond to a subpoena requiring his appearance in the State of New Jersey. Each of the defendants failed to make an appearance in New York City at the office of the Waterfront Commission on the return day of the subpoenas.
The failure of the defendants to appear is sought to be justified by them on the ground that the statute does not give the Waterfront Commission the power to compel a resident of the State of New Jersey to appear before it in the State of New York, and that if such statutory authority is attempted to be given it is beyond the power of the legislature to grant it.
In determining whether the Commission has power to issue the subpoenas in question, the authority given by the legislatures of the two states should be liberally construed, not only because of the express provision of the statute (N.J.S.A. 32:23-72), but as being incidental to a full effectuation of the legislative intent in the light of the purposes for which the Commission was created. Rosenthal v. State Employees' Retirement System, 30 N.J. Super. 136, 142 (App. Div. 1954); see also Leitner v. Citizens Casualty Co. of New York, 135 N.J.L. 608, 611 (E. & A. 1947); Kobylarz v. Mercer, 130 N.J.L. 44, 52 (E. & A. 1943); Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940). The Compact clearly grants the Commission the power to issue subpoenas to compel the attendance of witnesses in connection with an investigation or a license hearing. (Article IV, sec. 8; Article XI, par. 5 (N.J.S.A. 32:23-10(8); N.J.S.A. 32:23-49).
The section relating to subpoenas to attend a hearing, having to do with licenses or registrations, in language identical to that authorizing the issuance of subpoenas in investigations, provides:
"The commission * * * shall have the power to issue subpoenas throughout both States to compel the attendance of witnesses and the giving of testimony * * * in connection with any such hearing." (Emphasis supplied.) (Article XI, par. 5; (N.J.S.A. 32:23-49))
*40 "Such hearing," as mentioned in the above statute, is in the nature of a trial. The parties receive notice of the issues; are given the opportunity to present testimony; and it is the duty of the commission "* * * to issue subpoenas at the request of and upon behalf of the licensee, registrant or applicant." (N.J.S.A. 32:23-49)
Certainly, it was not within the contemplation of the legislatures, in stating that subpoenas could be issued "throughout both states" to compel the attendance of witnesses in connection with a hearing, that the officer conducting the hearing would move it and the parties thereto from state to state depending upon the residence of a witness. In view of the identical language in regard to the issuance of subpoenas as to the Commission's investigatory powers and the Commission's subpoena power in conducting a hearing, it would be anomalous to conclude that the legislatures intended to restrict the subpoena power in the former instance and not in the latter.
Article IV, sec. 4 (N.J.S.A. 32:23-10(4)) authorizes the Commission to determine the location of its administrative offices and under this authority the Commission has established such offices in New York City. Those provisions of the Compact which empower the Commission to grant licenses to work in both states, to oversee and integrate hiring practices in both states, to promulgate regulations in both states, and to make investigations in both states, make it clear that the legislatures intended that the subpoena power of the Commission should extend across the New Jersey-New York State boundary.
The court is not faced with the problem of the subpoena power of an agency of the State of New Jersey or of an agency of the State of New York acting unilaterally, but rather with the subpoena power ceded by the two states to an autonomous bi-state entity. Therefore, the court cannot accept the defendants' argument that the subpoena power is effective in only one state, for to do so would lead to the conclusion that the lawmakers, in attempting to cope with a bi-state problem, granted the Commission every means *41 to administer the program in both states except the power of subpoena.
The defendants next contend that the Legislature of this State had no power to grant the Waterfront Commission the authority to issue subpoenas to compel residents of New Jersey to attend hearings in New York. The premise of this contention is that the Commission "is an agency of this state and an agency of New York. As an agency of this state its jurisdiction is limited by the boundaries of New Jersey and as an agency of New York its jurisdiction is limited by the boundaries of New York." They argue that the subpoenas are invalid because New Jersey officials cannot act as such in the State of New York and that a New York agency cannot reach into this State with its process. The error in this contention is that the defendants regard the Commission's action as being that of an agency which acts for each state within its own boundaries. If this contention were sound there would be no need of a compact, as each state could act independently within the confines of its own borders without the necessity of the consent of the Congress. In fact, the Commission is a body corporate and politic created by a compact entered into by the State of New Jersey and the State of New York pursuant to the authority conferred by the respective legislatures of said states, consent thereto having been duly given by the Congress of the United States. By the terms of the Compact the Commission was declared to be "a body corporate and politic, an instrumentality of the States of New York and New Jersey." (Emphasis supplied)
It is, therefore, manifest that the two states have joined by agreement to eliminate the territorial and jurisdictional boundary between them to accomplish the expeditious fulfillment of the mutual objectives for which the Commission was created. As previously mentioned, both states established one bi-state entity with certain governmental powers whose acts, whether performed in one state or the other, have equal effectiveness in both states.
Under the Constitution of the United States, Article I, Section 10, states have entered into compacts in order to *42 contend with problems which transcend state boundaries. It is a power inherent in sovereignty limited only to the extent that Congressional consent is required. State of Rhode Island v. Commonwealth of Massachusetts, 12 Pet. 657, 37 U.S. 657, 9 L.Ed. 1233 (1838).
There are three interstate commissions in the New York-New Jersey metropolitan area that have been established by compacts to perform certain functions, namely, the Port of New York Authority, N.J.S.A. 32:1-1 et seq.; Palisades Interstate Park Commission, N.J.S.A. 32:17-1 et seq.; Interstate Sanitation Commission, N.J.S.A. 32:18-1 et seq. The development of interstate compacts was the necessary result of the growth of the country that presented to adjoining states common problems which, while local in character, were beyond the jurisdiction of an individual state. An historical analysis of the compact concept, particularly in its application to the Port of New York Authority, may be found in "The Compact Clause of the Constitution  A Study in Interstate Adjustments," Frankfurter and Landis, 34 Yale L.J. 685, 696 (1925). In The Interstate Compact since 1925, by Zimmermann and Wendell, published by The Council of State Governments in 1951, at page 54, it is said:
"[Such compacts are] joint agencies of two or more governments; it follows that what powers they exercise derive not from any single government but from the authority conferred by all parent governments * * *. The powers of a state commission are fixed by state law; those of a compact commission are fixed by the compact which is state law in each of the jurisdictions party to the agreement. The territorial jurisdiction of a state commission is that fixed by the state law; the territorial jurisdiction of an interstate compact commission is that fixed by the compact. Of course, this means that the compact commission almost always will operate in two or more states. But this should present no difficulty because, so long as the interstate agency does not presume to take jurisdiction over an area beyond the borders of a compacting state, the commission's actions are buttressed by the powers conferred upon it by the compacting state in which the particular act is done."
In State ex rel. Dyer v. Sims, 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713 (1950), the United States Supreme Court held that a state legislature by a compact with other states may *43 delegate to an administrative body certain governmental powers although that body is outside the state.
Finally, defendants urge that it is unconstitutional to require a person to go beyond the limits of the state boundary to testify in another jurisdiction.
The Compact under consideration is a bi-state agreement by virtue of legislation passed by New Jersey and New York, consented to by the Congress, and is presumed to be constitutionally valid unless it is incompatible with a constitutional provision.
There is no merit in the defendants' contention that to compel them to attend as witnesses outside of the State of New Jersey is a denial of due process of law. It is conceded that the State may confer upon an administrative agency the power to issue subpoenas. The State may, by appropriate legislation, in the exercise of its sovereign power, cause one of its residents to be delivered to another state to meet criminal charges in that state although such resident is not a fugitive from the latter state. State ex rel. Gildar v. Kriss, 191 Md. 568, 62 A.2d 568 (Md. Ct. App. 1948). See N.J.S.A. 2A:160-14. A witness may be compelled by one state to testify in another. Commonwealth of Massachusetts v. Klaus, 145 App. Div. 798, 130 N.Y.S. 713 (App. Div. 1911). In recent years many states, including New Jersey and New York, have adopted the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings." N.J.S.A. 2A:81-19. Though the procedure prescribed by the Uniform Act is more formal than under the Compact, it illustrates the scope of the state's sovereign power to compel its citizens to testify outside its boundary. See In re Cooper, 127 N.J.L. 312 (Sup. Ct. 1941); In re Saperstein, 30 N.J. Super. 373 (App. Div. 1954).
The defendants argue that there is a possibility that by responding to the subpoenas they may become amenable in New York to the service of other process in an unrelated matter. In that event it would be the new process that would be vexatious, and not the subpoenas of the Commission. *44 The validity of the new process could be determined in a separate proceeding, but that would not affect the legality of the subpoenas issued by the Commission. Cf. Randall v. Randall, 14 N.J. Super. 110 (Ch. Div. 1951); Parker v. Marco, 136 N.Y. 585, 32 N.E. 989, 20 L.R.A. 45 (Ct. App. 1893). There is no constitutional right to immunity from the service of process. Lamb v. Schmitt, 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 (1931); cf. Rutledge v. Krauss, 73 N.J.L. 397 (Sup. Ct. 1906).
Due process of law is afforded if the person subpoenaed has recourse to the courts for a review of the legality of the subpoena. Consolidated Rendering Co. v. State of Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327 (1908). The defendants could have advanced any legal objections to the subpoenas before the Commission or before this court. Further, they have been heard in this case before the final disposition of this motion. Therefore, there has been no denial of due process.
For the foregoing reasons the court finds both defendants guilty of contempt. Sentence will be imposed after counsel have been heard.