Application of the AMERICAN PARTY to
Participate in Elections in the
State of Oklahoma.

Charles G. TATE, Plaintiff in Error,

v.

SECRETARY OF STATE, State of Okla-
homa, Defendant in Error.

Archibald B. HILL, Jr., A. L. Dowell and
Curtis Lawson, Plaintiffs in Error,

v.

SECRETARY OF STATE, State of Okla-
homa, Defendant in Error.

Nos. 43046, 43047.

Supreme Court of Oklahoma.

Decision July 23, 1968.

Formal Opinion July 30, 1968.

Harley E. Venters, Oklahoma City, for plaintiff in error Tate.

Archibald B. Hill, Jr., Oklahoma City, for plaintiffs in error Hill, Dowell, and Lawson.

McAfee, Dudley, Taft, Cates & Mark, by John B. Dudley, Judson S. Woodruff and Peter B. Bradford, Oklahoma City, for defendant in error.

## ORDER

Now on this 22nd day of July, 1968, the above causes having been submitted to this Court by the parties herein for a decision upon the merits of the appeal from the Certificate of Approval of Petition of American Party to be Placed on the Oklahoma Ballot, dated May 8, 1968, and this Court having fully and carefully considered the evidence submitted together with the written briefs and oral argument of the respective parties, finds that said certificate of the said Secretary of State, should be by this Court affirmed.

NOW THEREFORE IT IS HEREBY ORDERED that the Certificate of Approval of Petition of American Party to be Placed on the Oklahoma Ballot, made and entered on the 8th day of May, 1968, by the Honorable John Rogers, Secretary of State of the State of Oklahoma, is affirmed.

The Secretary of the State Election Board shall take notice hereof and govern himself accordingly.

A formal written opinion is to follow.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE this 22nd day of July, 1968.

Floyd L. Jackson
Chief Justice

## FORMAL OPINION

PER CURIAM:

This is an appeal from a certificate of the Secretary of State approving as sufficient the statement and affidavit required by 26 O.S.1961, § 6.2 which was filed with said official on behalf of the American Party. The appeals to this court appears to be authorized by Section 6.4 of said title.

There is no contention that the affidavit which was filed was not in the exact form required by the provisions of said section 6.2. Neither is there any serious contention that the American Party has failed to comply with the requirements of law as recognized by Cooper v. Cartwright (1948), 200 Okl. 456, 195 P.2d 290, pertaining to the organization of political parties prior to filing of their petition with the Secretary of State. Such petitions are authorized by 26 O.S.1961, § 229.

After the filing of the affidavit, protests by various persons were made thereto and hearings were held on such protests by the

Secretary. The affidavit was confirmed as sufficient by the Secretary and protestants have appealed to this court. Protestants' two separate appeals here are numbered 43,046 and 43,047 and are consolidated for disposition in this court under 43,046.

An order was heretofore issued by this court affirming the action of the Secretary and it was therein stated that an opinion would follow. Our reasons for the conclusion contained in said order are as follows.

■ Protestants contend that the Secretary did not allow them any time to verify the signatures which appear on the petition. We do not find such contention of error briefed by any of the parties. We have examined Section 229, supra, and find that it makes no specific requirements for information to be given by a signer of such a petition as are required by statutes in reference to Initiative Petitions. We also notice that 26 O.S.1961, § 229 requires that such a petition be signed by at least 5,000 persons. The petition here contains 23,519 signatures. The only requirement pertaining to such signatures is that they be only those of "voters of Oklahoma." We have not been advised by protestants as to any possible irregularities which a "check" of the signatures might reveal and the signatures appear genuine. Under these circumstances, we hold protestants' contention of error based on failure of Secretary to permit verifying of the signatures to be without substantial basis.

Contestants' primary contention is that the American Party, because it has nominated George Wallace for President, is seditious and should be refused recognition as a political party in this state. In connection with this position, it is urged that the sole purpose in forming the American Party in Oklahoma was to nominate George Wallace for President. It is further argued that this individual, because of certain statements and conduct on his part made and committed while he was Governor of Alabama, advocated, taught or justified a "program of sabotage, force and violation (sic), sedition or treason against the government of the United States of America * * *," (Title 26 O.S.1961, § 6.1) and that when he was thereafter nominated for President by the American Party that the latter "adopted" such statements and beliefs as the principles and beliefs of said party. The cited statute does provide in effect that if a "political party" commits the acts prescribed by the statute that such party shall suffer certain sanctions therein imposed. The statute involved provides as follows:

"No political party shall be recognized or qualified to participate in any primary, special or general election in this State, which is directly or indirectly affiliated, by any means whatsoever, with the Communist party, the Third Communist International, or with any foreign political agency, party, organization or government; or which either directly or indirectly carries on or advocates revolution, teaches or justifies a program of sabotage, force and violation, sedition or treason against the government of the United States of America or of this State, or which directly or indirectly carries on, advocates revolution, teaches or justifies, by any means whatsoever, the overthrow of the government of the United States or of this State, or change in the form of government thereof by force or violence."

■ From a careful study of the cited statute, we are of the view that the same only applies to political parties as distinguished from candidates of such a party or from individuals who are members or supporters of it. The protestants do not contend otherwise. They seem to realize that the actions of Wallace only as they have been approved or adopted by the party may be considered. We notice that a related statute was enacted covering such acts and/or conduct by candidates. 26 O.S.1961, § 162b. See also 21 O.S.1961, § 1266 covering acts by individuals.

Thus the question at issue here may be stated as follows:

Does Section 6.1 of Title 26 O.S.1961, apply so as to impose the sanctions therein prescribed against a political party under circumstances which (we will assume for purposes of argument) tend to establish that the party was formed for the sole purpose of nominating such person for a political office; such person was in fact nominated and that such person has in the past committed acts or advocated views condemned by said statute where such evidence fails to establish that the party adopted as its views such views of its nominee?

We think not for the following reasons:

In Dove et al. v. Oglesby (1926), 114 Okl. 144, 244 P. 798, this court observed:

"While the right of suffrage does not inhere in the mere right to live or to exist, yet it does inhere in the right of self-government, and the free exercise of such right is essential to the maintenance of self-government."

As far as this court is concerned, this same right exists today.

█ When we consider the importance therefore of the subject matter with which we are concerned here coupled with the fact that sedition and treason which, for practical purposes are identical, are included among the most despicable of all offenses, we are of the view and therefore declare it to be the public policy of this state that before the penalties and sanctions of Section 6.1, supra, may be invoked against a political party, it must be made to appear by competent evidence which is clear, cogent and convincing, that such party advocates such theories as are condemned by said statute. We are of the further view that a strong presumption exists that a political party is not in violation of said Section 6.1, supra, which has otherwise complied with the laws of Oklahoma in its organization and formation and which, by its express platform and principles, teaches or advocates beliefs and political ideals consistent with peaceable and lawful methods of accomplishing changes in our social, economic or political structure.

In determining whether the American Party should not be recognized because of Section 6.1, supra, we do not deem it necessary to determine whether Mr. Wallace has in fact committed any acts, or made any statements, which would amount to a violation of the statute if performed by the party. What we are concerned with is whether the proof in this case is clear, cogent and convincing that the American Party has adopted as its official views any views of its candidate for President which are not consistent with the announced beliefs of the party as expressed in its platform or statement of principles. If our answer would be in the affirmative, then we would be concerned with the nature of such views—as to whether they were seditious.

At the beginning of our discussion, we note that no one contends that the statement of principles of the party as contained in its platform contravenes the matters prohibited by Section 6.1, supra.

█ We disagree with protestants' contention that the act of nominating Wallace for President by the party amounted to an adoption of any and all views of Wallace or beliefs on his part, regardless of whether such views were in accord with the platform of the party or not. It is obvious, if protestants be correct, that no one could possibly make an intelligent determination as to the principles for which any of the parties stand, for one would necessarily have to look to the candidate and his most recent expressions of opinion and the purpose of political parties for existing would, to a large extent, be nullified.

█ Neither are we convinced of the validity of protestants' argument that because the sole purpose of forming the American Party was to get Wallace on the ballot that the views of the latter represent the views of the party. While, of course, this would be true to a large ex-

tent—else the man would never have received the nomination of the party—such is not necessarily true where the views of the candidate are at variance with the announced platform of the party. The candidate ordinarily would conform his views to the views of the party—not vice versa.

According to the record, some witnesses who were instrumental in forming or organizing the party testified that they had contemplated forming a third party for several years and that it was the intention of the organizers of this party that it be a permanent one. Others stated that if something happened that Wallace did not continue his candidacy, the party would select another. Witnesses testified that other people would be just as acceptable to the party as Mr. Wallace—one witness even named a few. One witness testified that it was expected that other persons would seek the nomination of the party for other offices, even on the local level. The Chairman of the party testified at one point when his views were being compared with Wallace: "* * * if Wallace thinks different, I disagree with him. I don't have to agree with everything he says to be for him for President." The same thing could probably be said by members of other political parties concerning the nominee of their party for the office of President.

A great portion of the voluminous record was taken up with evidence concerned with the activities of George Wallace while he was Governor of Alabama. Insofar as such evidence concerns actions of Mr. Wallace which could not be classified as contrary to the principles of the American Party of Oklahoma, we fail to see the materiality or relevance of it. It is admitted that he agrees with the platform of the party. The question is whether the party has accepted as its policy any of Mr. Wallace's views which may be classified as seditious and therefore inconsistent with the party platform. The witnesses were allowed almost unrestricted freedom to testify. For example, much testimony was admitted on the question of Mr. Wallace's witness and ability to discharge the duties of the office which he seeks—a question which obviously involves politics, not jurisprudence.

From an examination of the record and the briefs, we understand that it is the activities of George Wallace in opposing in 1963 the integration by negro students of the University of Alabama and three public schools of Alabama, which it is said amounted to illegal resistance to the laws of the United States and constituted sedition. This view is urged notwithstanding Wallace was never charged with the crime of sedition arising out of these occurrences. Our attention has not been called to any evidence which would indicate party approval, expressed or implied, of Governor Wallace's actions in handling the problem in Alabama. As a matter of fact, Mr. Little, the party's Chairman, testified:

"Q. Now, do you think, sir, that Governor Wallace was right in doing that?

"A. No, I will tell you what: We have our form of government so arranged that within its sphere the Federal Government is superior."

also,

"* * * I think he should have said that there was nothing he could do about it. He might have said it was erroneous or something of that kind, but now that executive order in the face of the Federal order, I would say that he made a mistake."

If Wallace defied the law (which question we do not decide), such action did not find approval with Mr. Little:

"Q. Would you defy that law?

"A. No, we wouldn't. Defy involves force. Now, we are not going to do that."

and further,

"A. We nominated him (Wallace), but we made our platform. Now that is what we stand for, it is our platform, and now we expect him to live up to that platform. * * *."

Other testimony indicated, or at least tended to establish, that Wallace's representatives had an active part in helping the party get organized. There is nothing in this however, to indicate a willingness of the party to modify its views to fit those of Mr. Wallace.

In the circumstances as revealed by this record, we are of the opinion and hold that the evidence was not clear, cogent and convincing, and not suffficient to show that the actions of George Wallace in his handling of the Alabama integration problem has been ratified or approved by the American Party and that the principles or beliefs evidenced by such actions and to the extent they conflict with the expressed views of the party have been adopted by the party.

Accordingly, we hold that the action of the Secretary of State in approving as valid the affidavit of the Chairman of the American Party which was filed by said officer as required by 26 O.S.1961 § 6.2 should be approved.

It is so ordered.

All the Justices concur.