## In re Allen et al.

*Vincent P. McDevitt,* for Commonwealth.

*John M. Murtagh,* for State of New York.

*Charles A. Wolfe,* for Kenneth Allen and Thomas Golden.

MACNEILLE, P. J., and MILNER, J., December 6, 1940. —This is an application by the Attorney General of the State of New York for subpœnas from this court ordering Kenneth Allen and Thomas Golden, citizens and residents of the State of Pennsylvania, to go into the State of New York and there to testify before the grand juries sitting in New York County and Queens County, N. Y. Kenneth Allen is a resident of Delaware County, Pa., and Thomas Golden is a resident of Philadelphia County, Pa. The application is that Kenneth Allen be ordered to appear before the grand juries in New York County and Queens County, in the State of New York, and that Thomas Golden be directed to appear before the grand jury in New York County, in the State of New York.

The proceeding is brought under the Act of the Commonwealth of Pennsylvania of July 15, 1935, P. L. 1017, as amended by the Acts of June 25, 1937, P. L. 2088, and June 15, 1939, P. L. 401.

The Act of 1935 as amended is a uniform act, and is substantially similar to acts on the same subject recently adopted by a number of States. It is a reciprocal act, the avowed purpose of which is to enable a State which has adopted the uniform act to secure the attendance in a criminal proceeding in that State of a witness who is within another State which has also adopted a similar act. The State of New York has adopted this uniform act: Laws of the State of New York of 1936, ch. 387, C. Cr. P. sec. 618-a.

The Pennsylvania act as amended June 15, 1939, provides, inter alia:

"If a judge . . . of a court of record in any state, which by its laws has made provisions for commanding persons within that state to attend and testify in criminal prosecutions in this Commonwealth, certifies . . . that a grand jury investigation has commenced or is

about to commence, that a person being within this Commonwealth is a material witness in such . . . grand jury investigation, and that his presence will be required for a specified number of days, any judge, learned in the law, of a criminal court of record in the county in which such person is, upon presentation of such certificate, shall fix a time and place for hearing and shall notify the witness of such time and place."

The act as originally enacted and as amended provides in section 2 that if at the hearing the judge determines that the witness is "material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution in the other state, that the witness will not be compelled to travel more than one thousand miles to reach the place of trial, and that the laws of the state in which the prosecution is pending and of any other state through which the witness may be required to pass will give to him protection from arrest and the service of civil and criminal process, he shall issue a subpœna . . . directing the witness to attend and testify in the court where the prosecution is pending at a time and place specified in the subpœna."

The act, as amended in 1937, also provides that "If said certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state, such judge may, in lieu of notification of the hearing, direct that such witness be forthwith brought before him for said hearing, and the judge at the hearing, being satisfied of the desirability of such custody and delivery, may, in lieu of issuing a subpœna, order that the witness be forthwith taken into custody and delivered to an officer of the requesting state."

The act also provides that if a witness disobeys a subpœna issued under this act he shall be punished in the same way as a witness who disobeys a subpœna is-

sued from a criminal court of record in this Commonwealth.

Section 4 of the act, as amended, provides for the case where a witness from another State is subpœnaed to testify in this Commonwealth. Another provision provides for the payment of witness fees and mileage.

The Attorney General of the State of New York, through his deputy assistant, John M. Murtagh, Esq., presented to this court certificates of the Courts of General Sessions for the County of New York and County of Queens, N. Y., and the witnesses Kenneth Allen and Thomas Golden appeared before this court with counsel and objected to the issuance of the subpœnas on the grounds: First, that the act authorizing the issuance thereof is unconstitutional; and, second, that they are not material and necessary witnesses in the proceedings in New York. The only testimony with regard to the proceedings in New York was given by the Assistant Attorney General, who testified that he is conducting an investigation before the grand juries of the Counties of Queens and New York, in the State of New York. Mr. Murtagh charged that a number of paving contractors got together some time in 1936 and agreed thereafter to submit collusive bids to the municipalities for paving of roads, and that this was a violation of the business and penal laws of the State of New York. He further made the charge that the Philadelphia firm of John Meehan & Son was among the contractors who had engaged in this collusive bidding; that Thomas Golden is a bookkeeper of that firm, and that Kenneth Allen was employed by George K. Watson & Company, which was a firm of accountants which had audited the books of John Meehan & Son, that Kenneth Allen was an employe of the accounting firm who actually did the auditing work. He stated that there is no criminal charge of any kind against either Mr. Golden or Mr. Allen. Both Mr. Golden and Mr.

Allen testified that they did not know anything about a conspiracy to engage in collusive bidding, and that they knew nothing about any payments by John Meehan & Son to any public officials or to other contractors.

Mr. Golden testified that all the controlling books of John Meehan & Son were kept in Philadelphia. He knew that John Meehan & Son was a partnership, and he knew how the profits were distributed.

Mr. Allen testified that in January 1938, upon the death of one of the partners of John Meehan & Son, he prepared a statement of the assets and liabilities of the old partnership, from which his firm opened a set of books for the new partnership, and that later on he prepared a balance sheet for the new partnership as of December 31, 1938.

The witnesses Allen and Golden challenge the constitutionality of the Act of 1935, as amended, upon a number of grounds, as follows:

*First:* The act violates article III, sec. 3, of the Constitution of Pennsylvania, which reads as follows:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title of the said Act of 1935 is: "An act relating to criminal procedure; providing for the securing of attendance of witnesses from without the State in criminal cases; and making uniform the law in reference thereto."

In Phillips' Estate, 295 Pa. 349 (1929), our Supreme Court said (p. 353):

"In Strain v. Kern, 277 Pa. 209; Spangler's Est., 281 Pa. 118, and Spector v. Northwestern Fire & Marine Ins. Co., 285 Pa. 464, 470, we said that a statute is constitutional only to the extent that its purpose is *clearly* expressed in the title, everything beyond this being violative of article III, section 3 of the state Constitution. We have also steadily held to the require-

ment of a *clear* expression, in contradistinction to one which can only be reached by a process of reasoning: Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Investor's Realty Co. v. Harrisburg, 281 Pa. 200; Guppy v. Moltrup, 281 Pa. 343."

Applying this principle to the present case, it is evident that the statute violates article III, sec. 3, of our Constitution. It merely advises persons examining the title that it relates to procedure for securing the attendance of witnesses from outside of Pennsylvania to testify in this State. The title does not give the slightest indication that the act provides that citizens of this State may be compelled by its provisions to go outside of Pennsylvania and testify in some other State.

The Uniform Act to Secure Attendance of Witnesses was also adopted by the State of New Jersey, in which State the title of the act is as follows: "Uniform Act to secure the attendance of witnesses from without the State in criminal proceedings". It will be noticed that the language is substantially the same as that of the title of the Pennsylvania act.

In New York v. Parker et al., 1 A.(2d) 54, the Circuit Court of New Jersey, Burlington County, in 1936, held the act unconstitutional for the reason that it violated a provision of the Constitution of New Jersey which provides, inter alia, that every law "shall embrace but one object and that object shall be expressed in the title." The New Jersey court said (p. 55):

"Assuredly a title which is misleading, by reason of its specific and limited reference to one definite object where another is embraced in the act, is faulty. True, the title of a statute meets the constitutional requirement when it mentions the subject matter generally and is accompanied with a succinct indication of the legislation concerning it. The title of this statute is not expressive of such a general subject as to create the inference that the statute, under such title, con-

tains provisions requiring witnesses from within this state to appear and testify in some other state. The conclusion seems irresistible that the summoning of witnesses in this state to testify in another and the summoning of witnesses from another state to testify in this state are two essentially different matters in that the distinct and specific mention of only one of such matters is not reasonably indicative of the other."

The Assistant Attorney General of New York, in his argument in this matter, sought to minimize Judge Jayne's decision by charging that it was prompted by "extra legal considerations", and called attention to the fact that the attempt to secure Ellis Parker, Jr., as a witness in New York was in connection with the Hauptmann case, and at the time the matter came before the court there was considerable animosity between New Jersey and New York. We consider this an unfair and unwarranted statement. Judge Jayne, who wrote the opinion, approached the question before him from a juridical standpoint and incidentally called attention to the fact that the title of the reciprocal or uniform statute in New York is "A uniform law to secure the attendance of witnesses from *within* and *without* the state in criminal proceedings." (Italics supplied.) In our statute and that of New Jersey the title refers only to witnesses from "without" the State. It is of interest that Tennessee in adopting the uniform act in 1939 entitled it: "Uniform Act to secure the attendance of witnesses from within or without a state in Criminal Proceedings": Laws of Tennessee 1939, ch. 148, sec. 1.

*Second:* The statute violates the fourteenth amendment to the Constitution of the United States, which provides, inter alia: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . ." Article IV, sec. 2, of the Federal Constitution provides that, "The

citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." Under the fourteenth amendment, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."

In some respects there is a difference between privileges and immunities referred to in the fourteenth amendment, which are those of citizens of the United States, and those referred to in article IV of the Constitution, which are those of citizens of States, but with respect to the question before us they are substantially the same.

In the Slaughterhouse Cases, 83 U. S. 36, 75 (1872), the United States Supreme Court, referring to the privileges and immunities of citizens under the fourteenth amendment, held that "the people of each State shall have *free* ingress and regress to and from any other State . . ." (Italics supplied.)

In Ward v. Maryland, 12 Wall. 418 (1870), the United States Supreme Court, with respect to article IV of the Constitution, commented (p. 430):

". . . it will be sufficient to say that the clause plainly and unmistakably secures and protects the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation . . ."

Mr. Allen and Mr. Golden are citizens of the United States and of the State of Pennsylvania. The rights which are guaranteed to them by the Federal Constitution as it is interpreted by the Supreme Court of the United States are clearly abridged by the uniform act to secure the compulsory attendance of nonresident witnesses which has been adopted by the State of Pennsylvania. The challenged act plainly violates the clauses of the Federal Constitution above quoted. It is

axiomatic that the laws of one State cannot be enforced in another and that the authority of one State cannot be in any way exercised within the limits of another, especially with reference to crimes against its laws. Here it is sought to compel peaceful citizens of our State, against whom no criminal or other charge whatsoever is made, to leave this State against their wills and to go into another State where they do not wish to go, and it is further sought to compel them, against their wills and under penalties, to do something in that other State where our legislature and courts have no powers and no jurisdiction. The privilege which citizens of this State have is *free* ingress and regress to and from other States, not compulsory and controlled ingress and regress. In this connection it must be borne in mind that the statute purports to give authority to compel a proposed witness to leave this State and go to another State to testify even though he is a nonresident of this State and is merely passing through this State or residing here temporarily.

In the Report of the Committee on Securing Compulsory Attendance of Nonresident Witnesses to the National Conference of Commissioners on Uniform State Laws, it was stated in referring to the uniform legislation under discussion here that "this character of legislation is not free from constitutional difficulties, and the only case which we have found in which the constitutionality thereof has been directly upheld is the case of Commonwealth of Massachusetts v. Klaus, 130 N. Y. Supp. 713. In the case cited the constitutionality of the New York statutes was upheld in an opinion by Judge Scott, but there is a strong dissenting opinion by Judge Laughlin." See 8 Wigmore on Evidence (3rd ed.), sec. 2195 (*e*).

In the case of Commonwealth of Massachusetts v. Klaus, 130 N. Y. Supp. 713, above referred to, the opinion filed is not a decision of a New York court of final

appeals, but of the Appellate Division of the First Department of the New York Supreme Court. Although two judges in that court held the act constitutional, they seem to have been influenced in their decision by the thought that a number of other States had passed a similar law. The court said (p. 715) :

"So if the Legislature of this state has in this instance passed an unconstitutional law, a number of other states have fallen into the same error. There can be no doubt that it is a duty which every man owes to society to give evidence, when called upon to do so in a court of justice, with some few exceptions not relevant here."

Of course the fact that other States have adopted a similar act does not insure its constitutionality, nor is the fact that under proper circumstances a man is under duty to give testimony conclusive of the legal proposition that he may be compelled to leave his State and go to some other State to testify viva voce.

In his dissenting opinion in that case Judge Laughlin answered the reasoning of the majority opinion conclusively when he said (p. 721) :

"The police power of the state has no bearing on the question under consideration, for no charge is made against Peale personally. The right of the state to summon before its courts, in the administration of the public justice of the state, persons found within the state, whether citizens, residents, or nonresidents, is quite clear, as is also the right, in the interest of comity between states and nations, to provide 'for the taking of testimony within the state for use without the state, and these rights are exercised by all sovereign states and countries. The right, however, attempted to be conferred by this statute is quite different. It is to compel one to leave the state, whom the state could not prevent from entering, and then to punish him for his failure to do something beyond the jurisdiction of the

state and of the judge whom it is attempted to authorize to inflict the punishment."

Judge Laughlin was of the opinion that the challenged act "violates the provision of the federal Constitution prohibiting the states from enacting any law abridging the privileges and immunities of citizens of the United States."

Judge Laughlin is not the only judge in New York who has held the challenged act unconstitutional. In In re Commonwealth of Pennsylvania, 90 N. Y. Supp. 808, Judge Blanchard denied a motion for a subpœna directing a citizen and resident of New York to appear and testify as a witness in a criminal case pending in a court of the State of Pennsylvania, saying:

"I can see no grounds upon which this statute can be sustained, and none is urged by counsel for the moving party." Judge Blanchard was of opinion that it would deprive the proposed witness of his liberty without due process of law.

*Third:* The statute violates the clause in the Fourteenth Amendment to the Federal Constitution, which provides: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . ."

Judge Laughlin in his dissenting opinion in Commonwealth of Massachusetts v. Klaus, supra, very well said (p. 720):

"The mere fact that the formality of appearing before a *judge* is required does not materially change the situation, for it has been attempted to confer authority on a judge of this state to issue a subpœna against a person produced before him within this state, commanding such person to leave the state and attend as a witness before a court in a state, within the territorial limits of which neither the Legislature nor the judge of this state has any jurisdiction. The attempt to confer authority on the judge to punish a failure to comply with such a subpœna as for a contempt of court

is without authority. There can be no contempt of a court, except it be a failure to do something that the court has authority to require to be done, and it must be with respect to the administration of the law within this state."

Article I, sec. 8, of the Constitution of Pennsylvania provides:

"The people shall be secure in their persons . . . from unreasonable . . . seizures . . ."

The Act of 1935, as amended by the Act of June 25, 1937, P. L. 2088, provides that the proposed witness may "be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state . . ." The statute gives no right to enter bail. The right of a witness to enter his recognizance to appear and testify in criminal cases has always been deemed a right to which he is entitled in this State. The legislature heretofore recognized this right. By the Criminal Procedure Act of March 31, 1860, P. L. 427, sec. 56, it is provided that "No witness in any case who enters his or her recognizance . . . to appear and testify in such prosecutions as require his testimony, shall be committed to prison . . ."

In Annenberg v. Roberts et al., 333 Pa. 203 (1938), our Supreme Court said (p. 213):

"To compel an individual to produce evidence, under penalties if he refuses, is in effect a search and seizure, and, unless confined to proper limits, violates his constitutional right to immunity in that regard: Boyd v. U. S., 116 U. S. 616, 621, 622."

The court in that case continues by stating that whether a statute which seeks to compel the giving of testimony violates article I, sec. 8, of the Pennsylvania Constitution and similar provisions found in the Fourth Amendment to the Federal Constitution depends on whether it is unreasonable "in its nature".

The statute under consideration with its provisions for taking a witness into custody and delivering him bodily over to authorities from a foreign jurisdiction is, in our opinion, clearly unreasonable and unwarranted. A person charged with a crime can be taken from one State to another in order that he may be punished for the crime. It is significant that the clause in .the Federal Constitution which reads as follows: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime"; is part of section 2 of article IV of the Federal Constitution and it immediately follows and thus qualifies the opening sentence of that section which guarantees to the citizens of each State all the privileges and immunities of citizens in the several States.

The authority for extradition is found in the Federal Constitution and the Federal statutes passed pursuant thereto. See R. S. §5278, 18 U. S. C. §662, Roberts v. Reilly, 116 U. S. 80, 94 (1885), and Innes v. Tobin, 240 U. S. 127, 131 (1916). It would seem that if it required a provision of the Federal Constitution to provide for the compulsory transfer of a person charged with a crime from one State to another, a fortiori, an act for the compulsory transfer of an innocent person from one State to another for the purpose of giving viva voce testimony should have like express constitutional authority, and that the act should permit the proposed witness to enter his recognizance as in extradition proceedings. A fugitive from justice or a person in this State charged with a crime in another State is allowed to enter bail unless the crime with which he is charged is punishable by death or life imprisonment: Act of April 21, 1927,

P. L. 327, sec. 16. Surely it is not due process of law to protect the liberty of criminals and fugitives from justice to a greater degree than the liberty of honest and law-abiding citizens of this State.

For the various reasons above mentioned we are of opinion that the Act of July 15, 1935, P. L. 1017, as amended by the Acts of June 25, 1937, P. L. 2088, and June 15, 1939, P. L. 401, violates both the Constitution of the United States and the Constitution of Pennsylvania, and is void and of no effect.

Aside from the question of the constitutionality of the challenged act it appears to us that Mr. Allen and Mr. Golden are not "material and necessary" witnesses in the proceedings before the grand juries in New York. They have testified that they know nothing about the conspiracy to enter into collusive bidding on paving contracts in New York, and petitioner says that he wants to prove by them that the partners in John Meehan & Son divided the profits of their partnership among the four members thereof, and that this fact is necessary and material in the case. Presumably the partners have submitted the usual bids and statements as partners which are generally required of bidders on municipal contracts, and the evidence that the proposed witnesses could give is merely cumulative or corroborative. Our impression that their testimony is not material and necessary is fortified by the fact of which we must take judicial notice that all four members of the partnership of John Meehan & Son were indicted by the grand jury of Queens County, of the State of New York, on November 27, 1940, for conspiracy to defraud New York City in connection with paving contracts. This indictment followed by one or two days the argument by the Assistant Attorney General of New York before us in presenting the petition for the subpoenas for the proposed witnesses that they were material and necessary in order to secure that indictment.

The petitions are therefore dismissed, and the subpœnas requested are refused.