**UNITED STATES v. MONJAR et al.**
**Appeal of ADAMS.**
**No. 9003.**

Circuit Court of Appeals, Third Circuit.
Argued Jan. 21, 1946.

Decided April 5, 1946.

See also 64 F.Supp. 746.

Louis L. Kaufman, of Pittsburgh, Pa. (Russell H. Adams, Dist. Atty., of Pittsburgh, Pa., on the brief), for appellant.

Daniel O. Hastings, of Wilmington, Del. (Ayres J. Stockly, of Wilmington, Del., on the brief), for Mantle Club and defendants-appellees.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

A grand jury of the Court of Quarter Sessions of the Peace for the County of Allegheny, Pennsylvania,[1] returned indictments naming several persons with violation of Pennsylvania statutes which need not be enumerated here. Many of the persons thus indicted had been convicted of violations of federal statutes in the District Court of the United States for the District of Delaware. Some of the defendants appealed to this court which affirmed the judgments of conviction. See United States v. Monjar, 3 Cir., 147 F.2d 916. Certiorari was denied by the Supreme Court, 325 U.S. 859, 65 S.Ct. 1191.

At the trial in the District Court of Delaware the United States introduced into evidence many books, documents and other exhibits procured by subpoenas duces tecum[2] served upon certain of the defendants, both individuals and corporations, throughout the United States. Most of these exhibits, therefore, are corporate books and records but some of them are the property of individuals.[3] After denial of certiorari by the Supreme Court, the District Attorney of Allegheny County, petitioning the District Court of the United States for the District of Delaware, prayed that the books and records hereinbefore described be made available to him for use in connection with the prosecutions of the defendants indicated in the Pennsylvania Court. At about the same time the defendants petitioned the District Court of Dela-

---

[1] We will refer to this Court as the "Pennsylvania Court."

[2] The appellant's brief, p. 3, so states, as does that of the appellees, p. 3. No proof was offered on this issue. We will treat the statements as correct and will assume since the record is silent upon the subject as are the briefs of the parties that the books, papers and documents sought by the appellant came into the possession of the Clerk of the District Court by exercise of the subpoena power.

[3] A list of the books, papers and documents which the appellant seeks to have produced, as appears from "Schedule 'A'", includes what are apparently original files of the Secretary of State of the State of Delaware (item 1); original affidavits of the defendants filed in support of requests for bills of particulars (items 243 to 250 inclusive); "Sworn testimony" of defendants and others taken before certain "special agents" of the United States, not otherwise categorized (items 259 to 262 inclusive); personal records, including pass books, many cancelled personal checks and many corporate records of Delaware corporations. The exhibits sought are numbered from 1 to 299, inclusive, and many of the numbers embrace different papers.

ware for the return of the exhibits. The court below granted the defendants' petition and denied that of the District Attorney of Allegheny County. The latter has appealed.

■ We may take judicial notice of the fact that certain proceedings were had in the Court of General Sessions of the State of Delaware in and for New Castle County, purportedly pursuant to the authority of the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings."[4] A certificate pursuant to the first paragraph of Section 2[5] of the Uniform Act certifying to the necessity for the appearance of the Clerk of the District Court of Delaware in order that he might produce the books, records and documents sought in the Pennsylvania Court was filed in the Court of General Sessions of Delaware. The certificate had attached to it a subpoena duces tecum issued by the Pennsylvania Court which was directed to the Clerk of the District Court of Delaware to require him to produce the books, records and documents specified before the Pennsylvania Court. It also appears that the Court of General Sessions of Delaware

issued a rule to show cause directed to the Clerk of the District Court of Delaware to appear and to show cause why a subpoena should not be issued under its seal directing him to appear before the Pennsylvania Court with the records and that, after the order of the District Court of Delaware had been filed directing its Clerk to return the records to persons from whom they had been subpoenaed originally, all proceedings in the Court of General Sessions of Delaware were dismissed as moot. The appellant's petition to the court below fails to mention the proceedings in the Court of General Sessions of Delaware.

The Uniform Act was adopted by Delaware on April 7, 1937 and by Pennsylvania on June 23, 1941. See Laws of Delaware, Vol. 41, Ch. 214, and 19 P.S.Pa. §§ 622.1–622.7. It would appear therefore that at least some [6] of the provisions of Section 2 of the Act may be applicable under the circumstances at bar since both Pennsylvania and Delaware have adopted the Uniform Act. The appellant approaches his problem of procuring the documents which he seeks with an apparent dichotomy of mind. He seems to rely on the Uniform Act to a very slight extent and places his reliance upon decisions [7] of the federal courts based

---

[4] We will refer to this Act in this opinion as the "Uniform Act". See Uniform Laws Annotated, Vol. 9, Miscellaneous Acts, pp. 31–37.

[5] The first paragraph of Section 2 provides:

"If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution, or grand jury investigation, and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing."

[6] We will delimit them at a later point in this opinion.

[7] He cites Matter of Harris, 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732; Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919, 47 L.R.A.,N.S., 263; Ponzi v. Fessenden, 258 U.S. 254,

42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879; Dier v. Banton, 262 U.S. 147, 43 S.Ct. 533, 67 L.Ed. 915; and Whan v. Green Star S.S. Corporation, 2 Cir., 38 F.2d 68. See also In re Moody, D.C., 10 F.Supp. 825.

In the Harris case the Supreme Court held only that a receiver in bankruptcy to whom the bankrupt had delivered his books might employ them as evidence in a criminal case against the bankrupt. Mr. Justice Holmes stated, 221 U.S. 274 at page 280, 31 S.Ct. 558, 55 L.Ed. 732: "The question is not of testimony, but of surrender—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he no longer is entitled to keep. If a trustee had been appointed, the title to the books would have vested in him by the express terms of § 70 [11 U.S.C.A. § 110], and the bankrupt could not have withheld possession of what he no longer owned, on the ground that otherwise he might be punished. * * * The right not to be compelled to be a witness against oneself is not a right to appropriate property that may tell one's story. As the bankruptcy court could have enforced title in favor of the trustee, it could enforce possession ad interim in favor of the receiver."

strictly on the principle of comity and not on any statutory authority. It will be observed that in all of these decisions the books sought to be produced were in the possession of officers of federal courts, either receivers in bankruptcy, trustees in bankruptcy or receivers in equity, and that such possession had passed to the officers of the courts either by operation of law or by decrees of court. It should be noted also that in the case at bar the possession of the documents by the Clerk of the District Court is an incident of the trial before the District Court. In none of the cases cited by the appellant did it appear that it was desired to take the documents beyond the jurisdiction of the court which had possession of them.

We think that the basis for our decision is to be found in the opinion of the Court of Appeals for the Second Circuit in the Whan case (cited in note 7 supra) and in particular in that portion thereof in which it was said that the accident of a federal receivership should give state litigants no greater rights to produce evidence than they would have had if the receivership had not existed and that the question of the production of records under the circumstances was one lying within the field of state practice. See the quotation contained in the last paragraph of note 7, supra.

Applying the principle implicit, if not explicit, in the Whan decision to the facts of the case at bar we conclude that the issues presented should be determined according to the practice of the Commonwealth of Pennsylvania and the State of Delaware. Both States have set up an identical practice to require the production of out-of-the-state witnesses in a criminal trial since both have adopted the Uniform Act. The possession by the District Court of Delaware, through the agency ·of its Clerk, of the books, papers and documents sought to be produced is, at least in one sense, that of a mere custodian. The criminal proceeding in the District Court is over and the records sought no longer are required by the United States. While the District Court is entitled to make sure that the constitutional rights of the defendants will not be violated if the records sought by the appellant are turned over to him, the District Court should accept with assurance the adjudication of a court of record of the State of Delaware of any constitutional question which may be presented. The

---

In the Johnson case the Supreme Court passed upon the question of whether or not a bankrupt's books might be admitted against him in a criminal prosecution. Mr. Justice Holmes stated, 228 U.S. 457 at page 458, 33 S.Ct. 572, 57 L.Ed. 919, 47 L.R.A.,N.S., 263, "A party is privileged from producing the evidence, but not from its production. The transfer by bankruptcy is no different from a transfer by execution of a volume with a confession written on the fly leaf."

The Ponzi case is not in point, the question there adjudicated by the Supreme Court being whether or not a convicted defendant confined in a federal prison could be compelled to stand trial in a state court.

In the Dier case the Supreme Court held that where books and papers are in the custody of a bankruptcy court they cannot be taken therefrom by subpoena of a state court except upon the consent of the federal court. Mr. Chief Justice Taft stated, 262 U.S. 147 at page 151, 43 S.Ct. 534, 67 L.Ed. 915, "In granting or withholding that consent the latter exercises a judicial discretion dependent on the circumstances, and having due regard to the comity which should be observed toward state courts exercising jurisdiction within the same territory.", citing Ponzi v. Fessenden, supra. The appellees in the instant case lay particular emphasis upon the last four words quoted above, viz., "within the same territory", pointing out that they are not to be tried in Delaware but in Pennsylvania.

In the Whan case a receiver had been appointed for Green Star Steamship Corporation in the District Court of the United States for the Southern District of New York. Thereafter certain insurance companies brought an action at law against Equitable Trust Company of New York in a court of the State of New York. The insurance companies sought to examine the books in the hands of the receivers and to have them produced at the trial. The Circuit Court of Appeals for the Second Circuit held that the existence of a federal receivership should not be allowed to hamper litigants in a state court from procuring their evidence but on the other hand " * * * the accident of a federal receivership should give state litigants no greater rights to procure evidence before trial than they would have, if the receivership did not exist"; that·"whether the books should be examined before trial is a question of state practice. Decisions as to federal practice have nothing to do with it."

present function of the District Court of Delaware in respect to the records sought is really ministerial.

■ In making these statements we do not intend to imply that the absolute control of exhibits introduced into evidence in a trial in a district court of the United States does not rest in that court. A state tribunal by the issuance of a subpoena duces tecum addressed to the clerk of a district court of the United States cannot divest that court of that control. But in the interest of comity between the courts of our dual system a district court of the United States should cause its clerk to respond to a subpoena duces tecum addressed to him by a state tribunal if no federal purpose remains to be served by the retention of the documents sought.

■ It must be borne in mind, however, that a clerk of a district court of the United States who responds to a subpoena duces tecum issued by a state tribunal under the Uniform Act will respond to the subpoena not as an individual but as the clerk of the court. It is obvious therefore that the state court may impose no onerous burden upon the clerk such, for example, as those set out in the third paragraph of Section 2[8] of the Uniform Act and that the time and place and the extent to which the clerk shall testify in the state court which seeks the documents must meet with the full approval of the district court. We think that it would be appropriate as a matter of practice for the district court to enter an order approving or disapproving the terms of the subpoena if one is issued by the State tribunal.

■ A clerk of a district court of the United States is the court's principal administrative officer. Obviously, that court would not approve of a subpoena which would require its clerk to travel some thousands of miles or cause him to absent himself for a long period of time from the performance of the duties imposed upon him by the statutes of the United States. The terms upon which its clerk should testify rest within the sound legal discretion of the district court. We think it would be appropriate for the court to include in its order, referred to in the preceding paragraph, such terms as it may deem appropriate. For example, the district court might consider it desirable to substitute a deputy-clerk as the witness to produce the documents rather than the clerk himself.

■ As we have stated it is our opinion that the question of whether or not the Clerk of the District Court should produce the books, papers and documents sought in the case at bar is one to be answered by the practice of the Commonwealth of Pennsylvania and of the State of Delaware and that comity will serve to permit the Clerk to produce the records sought if a court of record of the State of Delaware shall so direct under such terms and conditions as will meet with the approval of the District Court. We are of the opinion, however, that the principle of comity alone will not serve to require the Clerk of the District Court to produce in the Pennsylvania court, the documents sought which were gathered from various parts of the United States and brought to the District of Delaware under federal subpoenas. The interposition of the Uniform Act seems necessary to effect the result sought by the appellant. The Uniform Act of course is not available to a district court of the United States. It is appropriate for the appellant to proceed, as he has apparently attempted to proceed at least to some extent, through the medium of the Uniform Act and the state tribunals.

■ As has been indicated questions relating to production of the books, papers and documents sought by the appellant may be determined by a court of record of the State of Delaware. Moreover, as we have indicated, it would seem to be appropriate for the Clerk of the District Court, qua clerk but not as an individual, to lend himself in aid of the adjudication of the questions which will doubtless be presented to the State Court. The Clerk, however, must not be put to any expense if he pursues such a course and may avail himself of the

---

[8] For example, the third paragraph of Section 2 provides: "If said certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state, such judge may, in lieu of notification of the hearing, direct that such witness be forthwith brought before him for said hearing; and the judge at the hearing being satisfied of the desirability of such custody and delivery, for which determination the certificate shall be prima facie proof of such desirability may, in lieu of issuing subpoena or summons, order that said witness be forthwith taken into custody and delivered to an officer of the requesting state."

legal services which may be offered to him by the parties to the proceeding.

The decision of the court below upon the record offered to it in the instant case was correct. We think, however, that a reasonable time should be allowed to the appellant to institute proceedings anew in accordance with the provisions of the Uniform Act in a court of record in Delaware. Otherwise, the delicate balance which comity has asserted hitherto in the courts of our dual system might be disturbed. A reasonable time in our judgment would be sixty days from the date of this opinion. Accordingly, the order of the court below will be vacated and the cause will be remanded with the direction to proceed in accordance with this opinion.