### In re O'NEILL.

Circuit Court, Dade County.

July 20, 1956.

Frank S. Hogan, District Attorney, Francis X. Clark, Assistant District Attorney, both of New York City, for the State of New York.

L. J. Cushman, Miami, and S. G. Lippman, Washington, D. C., for respondent.

GEORGE E. HOLT, Circuit Judge.

This is an application by the People of the State of New York for an order requiring Joseph C. O'Neill to attend and testify before the grand jury of New York County, New York, pursuant to provisions of chapter 942, Florida Statutes 1955, the "Uniform Law to Secure the Attendance of Witnesses from within or without a State in Criminal Proceedings," which, for the sake of brevity, will hereafter be referred to as the "uniform law"—which was adopted in this state in 1941.

On April 23, 1956 an assistant district attorney in and for New York County, New York, filed in this cause a certificate of a judge of the court of general sessions of the county of New York, supported by an affidavit of an assistant district attorney of that county, certifying that there was then pending in that court a criminal investigation by the Fourth November 1953 grand jury of that county entitled "The People of the State of New York v. John Doe," and that a certain Joseph C. O'Neill, then within Dade County, Florida, was a necessary and material witness for the state of New York in a criminal proceeding being conducted by the grand jury, and requesting that he be taken into immediate custody and delivered to an officer of the state of New York to be conveyed to New York in order to assure his attendance as a witness before the grand jury. Upon presentation of the certificate, this court issued an attachment for O'Neill, and a rule directing him to show cause why an order should not issue to take him into immediate custody and deliver him to an officer of the state of New York to assure his attendance in New York.

O'Neill was forthwith seized and arrested on the attachment and rule to show cause, and brought before this court in custody. Through his attorney he requested time to review the matter upon which the attachment and rule to show cause was based, and to file a response to the rule to show cause. This court fixed bail at $2,500 and allowed him time within which to file his response to the rule to show cause. Thereafter, O'Neill filed his response to the rule and a motion to quash, and this cause came on to be heard on June 18, 1956, on the certificate of the judge of the court of general sessions of New York County, New York, the rule to show cause issued thereon, the response, and the motion to quash filed

by and on behalf of O'Neill, who appeared in person and by counsel, the applicant being represented by Hon. Francis X. Clark, an assistant district attorney in and for the county of New York, assigned to the rackets bureau of the district attorney's office.

By his response to the rule to show cause O'Neill objected to the entry of any order that he be taken into immediate custody, or that he be delivered to an officer of the state of New York, on the ground that the "uniform law" was unconstitutional and void, in that same was in contravention of certain provisions of the constitution of the United States, and the constitution of Florida, and that no sufficient showing had been made that he was or·is a necessary and material witness in said criminal proceeding, and other reasons, which will be noted hereinafter. The matter was fully argued by counsel for the respective parties, and the argument was reported, transcribed, and submitted to the court, together with briefs by counsel for the respective parties, all of which have been fully considered by the court.

The "uniform law," first adopted by the National Conference of Commissioners on Uniform State Laws, in 1931, (see note, 24 F.S.A. 288), in point of fact is "uniform" in name only, and in its general over-all outline, because almost every state which has adopted it, has made changes in its text. Although 25 years have elasped since it was first proposed for adoption by the states and although it has been adopted in somewhat different form by 42 states and the territory of Puerto Rico (see 9 U.L.A. Supp. 33), there appear to be only eleven reported decisions, listed in the appendix to this opinion, in which it has been considered, construed, or passed upon in any way.

The "uniform law" appears to provide for two methods by which a witness may be compelled to appear and testify as a witness in another state. *First,* by the issuance of a "summons *** directing the witness to attend and testify in the court" of the other state, as provided in subsection (2) of section 942.02; in other words, by the issuance of a witness subpoena by a court of record of this state, directed to the witness, requiring him to go to another state, and appear and testify in the court of such other state. *Second,* by the issuance or entry of an order, provided by subsection (3) of section 942.02, that the witness be taken into immediate custody and delivered to an officer of the requesting state to be taken as a prisoner to the state where his attendance is desired as a witness. The certificate which is the basis for this application seeks to invoke the second method—that is, it recommends the immediate seizure of O'Neill, and his immediate delivery to officers of the state of New York.

The briefs filed by counsel for the applicant and counsel for the respondent have not cited a single reported case in which any court has considered or passed upon the constitutionality of the particular subsection of the "uniform law" (subsection (3) of section 942.02) except In re Allen (1940), 49 Pa. D. & C. 631, in which the court, after fully considering the constitutionality of the Act, held it unconstitutional, and expressly held (text 642-644) that the section attempting to provide for the immediate seizure of the witness and his immediate delivery to officers of the requesting state, is unconstitutional. The only other reported decision which refers to that particular subsection of the Act is U. S. v. Monjar (C.C.A. 3, 1946), 154 F. 2d 954, 170 A.L.R. 327, in which the court merely refers to said subsection, and holds that it should not be invoked against the clerk of the United States district court for the district of Delaware.

There appear to be only three reported decisions which have considered the constitutionality of the "uniform law"—two in New Jersey, and one in Pennsylvania. In re Allen, supra, decided in 1940, is the earliest of the three decisions, and in a well considered, well supported decision, the court held the Act unconstitutional because—(1) It violates the fourteenth amendment to the constitution of the United States, which forbids any state to make or enforce any law which abridges the privileges and immunities of citizens of the United States; (2) It violates the clause in the fourteenth amendment to the constitution of the United States which provides that no state shall deprive any person of life, liberty, or property, without due process of law; and (3) It violates the constitutional guaranty that the people shall be secure in their persons from unreasonable searches and seizures. In re Cooper, 127 N.J.L. 312, 22 A. 2d, 532, decided in 1941, is the next case in which the constitutionality of the Act was considered, but the question does not appear to have been fully presented; nor does it appear to have been fully considered or decided, and in that case, the provision authorizing the immediate seizure of the witness, and his immediate delivery to the officers of the requesting state (subsection (3) of section 942.02) was not involved or considered. The third case, In re Saperstein, 30 N.J. Super. 373, 104 A. 2d 842, cert. den. 75 S. Ct. 110, 348 U.S. 874, 99 L. Ed. 688, decided in 1954, primarily dealt with the question whether the "summons" or subpoena provided for by the Act (subsection (2), section 942.02) authorized a subpoena duces tecum, and the provision relied upon in the case before the court, subsection (3), was not involved. The only point considered, so far as constitutionality of the Act was concerned, was whether it constituted a "compact" between states, in violation of the third clause of section 10, article

I, of the constitution of the United States, and the court held that it did not constitute such a "compact." Thus, in the only three cases in which the constitutionality of the "uniform law" has been considered, it has been held unconstitutional in one, and in the other two, its constitutionality does not appear to have been carefully or thoroughly argued, considered, or decided, but, in the only case (In re Allen, supra) in which the constitutionality of subsection (3) of section 942.04 has been considered, it was held unconstitutional. In view of the fact that the constitutionality of the "uniform law" has been considered in only three cases during the 25 years which have passed since it was first proposed, and by the courts of only two of the 42 states which have enacted the law (Pennsylvania and New Jersey), it can hardly be said that its constitutionality is settled.

Two other cases have been cited, bearing upon the constitutionality of the Act under consideration—In re Commonwealth of Pennsylvania, (Sup. Ct.), 90 N.Y.S. 808, decided in 1904, and Commonwealth of Massachusetts v. Klaus, 145 App. Div. 798, 130 N.Y.S. 713, decided in 1911. The "uniform law" was adopted by the National Commissioners on Uniform State Laws in 1931, 20 years after the decision in the Klaus case, and 27 years after the decision of the case in 90 N.Y.S. 808, both of which involved section 618-a of the New York Code of Criminal Procedure, undoubtedly a forerunner of the "uniform law," *but which did not contain any provision similar to sub-section (3) of sec. 942.02.* It is also worthy of note that neither of those cases was decided by the highest court of the state of New York, and in the first (In re Commonwealth of Pennsylvania) the court held the Act to be unconstitutional, while in the second (Commonwealth v. Klaus) the Act was held constitutional by a divided court, with a well-considered, vigorous dissent. In conclusion, it may be said that the constitutionality of the "uniform law" is not settled, but appears to be in grave doubt.

In considering this case, it must be borne in mind that O'Neill is not under indictment in the state of New York, and it is not contended that he is a fugitive from justice so as to make him subject to extradition pursuant to the Uniform Interstate Extradition Law, sections 941.01 to 941.37, Florida Statutes 1955, or under the Federal Criminal Extradition Statute (sections 3181 to 3195, Title 18 U.S.C.A.) expressly authorized by section 2 of article IV of the constitution of the United States. It appears without question in this case that O'Neill is a citizen of Illinois, and that he resides, and has his home, and office or place of business in that state. He came into the state of Florida on or about April 23, 1956 for a few days' sojourn in connection with a con-

vention which he was attending. He is not charged with having violated any law of the state of New York, or the state of Florida, or any other state.

It is settled beyond controversy or debate that the courts of Florida have no jurisdiction to issue process running beyond the territorial limits of this state, and have no jurisdiction over persons, or property beyond the territorial limits of the state of Florida. "A court created within a sovereignty is necessarily limited as to its sphere of direct action on persons and things, real estate and chattels within that sovereignty." Hotchkiss v. Martin (Fla.), 52 So. 2d. 113. Process of one state has no force or validity within the territorial limits of another state, and cannot run beyond the territorial limits of the state. Passett v. Chase, 91 Fla. 522, 107 So. 689. A court created within and for a particular territory is limited in its jurisdiction to such territory, and no judicial process has any force outside such limits. Phillips v. State, 75 Fla. 93, 77 So. 665. "A warrant of arrest issued in one state may not be executed in another state, for it has no validity beyond the boundaries of the state by whose authority it was issued." 3 Fla. Jur., Arrest, p. 55. It has been settled ever since Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565, that the legislature of a state cannot authorize process running beyond the territorial limits of the state. Under the authorities cited, it is clear that the legislature of this state has no constitutional power to confer jurisdiction upon the courts of this state to issue process running beyond the territorial limits of the state of Florida, and that is the effect of subsection 1 of section 942.02. Just as the legislature of this state is powerless to confer jurisdiction upon this court to issue witness subpoenae or other process running into Georgia, Alabama, or any neighboring state, it is likewise powerless to confer jurisdiction upon this court to issue witness subpoenae or other process running into other states, such as New York. If a witness subpoena were issued by this court commanding a witness to appear before a court of the state of New York, such process would be of no force and effect as compulsory process. Insofar as subsection 1 of section 942.02 attempts to confer any such power, authority, or jurisdiction upon any court of record of this state, it is unconstitutional, void, and of no effect. Passing for the moment, the fact that the legislature of this state is powerless to confer upon this or any other court of the state of Florida jurisdiction to issue process running beyond the limits of the state, section 942.02 also violates the fourteenth amendment to the constitution of the United States in that it abridges the privileges and immunities of citizens of the several states, since it impairs the right of free ingress and egress from state to state, which is one of the

rights of national citizenship guaranteed by the fourteenth amendment to the constitution of the United States. Edwards v. California, 314 U.S. 160, 62 S. Ct. 164, 86 L. Ed. 119; In re Allen, supra; Commonwealth v. Klaus, supra; and Commonwealth v. Pennsylvania, supra.

Perhaps the most serious objection to the constitutionality of the "uniform law" (sections 942.01 to 942.04) is found in the provisions of subsection (3) of section 942.02, which attempts to authorize a court of this state to order a citizen not charged with the commission of any crime, or even suspected of having committed any crime, to "be taken into immediate custody and delivered to an officer of the requesting state," or, "in lieu of issuing subpoena or summons, order that such witness be forthwith taken into custody and delivered to an officer of the requesting state." This subsection makes no provision for bail, and if followed literally, does not contemplate or permit bail, but attempts to authorize any court of record to order a citizen to be arrested, seized and held without bail, and to be delivered, without bail, to an officer of the requesting state to be carried away against his will as a prisoner to another state. Neither counsel has cited any reported case holding this subsection of the Act under consideration constitutional. This section was merely mentioned in passing in U.S. Monjar (C.C.A.3), 154 F. 2d 954, 170 A.L.R. 327, with the observation that should a subpoena be issued to the clerk of the United States court for the district of Delaware, he should not be subjected to the provisions of that section. In the case of In re Allen, supra, the court held that the failure of this section to provide for bail rendered the Act unconstitutional. In discussing this subject the court said at page 643—

> The Statute under consideration with its provisions for taking a witness into custody and delivering him bodily over to authorities from a foreign jurisdiction is, in our opinion, clearly unreasonable and unwarranted. A person charged with a crime can be taken from one State to another in order that he may be punished for the crime. It is significant that the clause in the Federal Constitution which reads as follows: "A person charged in any State with Treason, Felony, or other crime, who shall flee from Justice, and be found in another State, shall on Demand of the Executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime"; is part of Section 2 of Article IV of the Federal Constitution, and it immediately follows and thus qualifies the opening sentence of that section which guarantees to the citizens of each State all the privileges and immunities of citizens in the several States.

> The authority for extradition is found in the Federal Constitution and the Federal Statutes passed pursuant thereto. See R.S. par. 5278, 18 U.S.C. par. 662. Roberts v. Reilly, 116 U.S. 80, 94 (1885), and Innes v. Tobin, 240 U.S. 127, 131 (1916). It would seem that if it required a pro-

vision of the Federal Constitution to provide for the compulsory transfer of a person charged with a crime from one State to another, a fortiori, an Act for the compulsory transfer of an innocent person from one State to another for the purpose of giving viva voce testimony should have like express constitutional authority, and that the Act should permit the proposed witness to enter his recognizance as in extradition proceedings. A fugitive from justice or a person in this State charged with a crime in another State is allowed to enter bail unless the crime with which he is charged is punishable by death or life imprisonment; Act of April 2, 1927, P.L. 327, Sec. 16. Surely, it is not due process of law to protect the liberty of criminals and fugitives from justice to a greater degree than the liberty of honest and law-abiding citizens of this State.

The right to bail in Florida is not a mere "privilege," which may be denied in the court's discretion. The right to bail is absolute, unless the person is charged with a capital offense, and even then, he is entitled to bail unless the proof of guilt is evident or the presumption great. Ex parte McDaniel, 86 Fla. 145, 97 So. 317; Bozovichar v. State (Ind.), 103 N.E. 2d 680; Section 9, Declaration of Rights of the constitution of Florida. The right to bail under the constitution of the United States, and other states is almost universal and unrestricted, except in capital cases where the proof of the prisoner's guilt is evident or the presumption of his guilt is great. See: Section 5, Bill of Rights of the constitution of New York; Eighth Amendment to the constitution of the United States. "A denial of such right is a deprivation of liberty without due process of law." 3 Fla. Jur., Bail and Recognizance, pp. 37-38.

Subsection 3 of section 942.02, invoked by the applicant in this case, is clearly unconstitutional and void, and the application for an order to take Joseph O'Neill into immediate custody must be and is hereby denied.

Subsection 2 of section 942.02 requires that this court determine that the witness is "material and necessary." Neither the certificate, nor the affidavit upon which it is based, set forth any *facts* from which this court can determine that O'Neill is a "material and necessary" witness before the grand jury, and the showing made in that respect is no stronger than the showing made in the Application of Stamler (N.Y. 1952), 279 App. Div. 908, 111 N.Y.S. 2d 313, in which the state of New Jersey sought a subpoena order to require Frank Costello to appear and testify as a witness in a criminal proceeding in that state. In that case, the court said—

Section 618-a of the New York Code of Criminal Procedure contemplates, at the very least, that the Court of the demanding State shall have passed on the question whether the testimony will be material in the prosecution pending in that State. Whether a mere statement that the witness is a material witness would be sufficient without further recital of the charge and the facts upon which the finding of materiality was

based, we do not need now to pass upon. At least upon the certificate produced in this case it was improper for the Judge of the Court of General Sessions to grant the subpoena-order without any proof of the materiality of the testimony of the Order.

In State v. Blount (Ore. 1954), 264 P. 2d 419, cert. den. 74 S. Ct. 711, 347 U.S. 962, 98 L. Ed. 1105, the Oregon court held that the showing of the facts required by the "uniform law" to show that the witness is "material and necessary," should at least be as great as the showing required in order to obtain a continuance upon the ground of the absence of a material witness, and that it must appear from a statement of the *facts* that such witness is "material and necessary," and that a mere statement to that effect is insufficient. In State v. Fouquette (Nev. 1950), 221 P. 2d, 404, cert. den. 71 S. Ct. 799, 341 U.S. 932, 95 L. Ed. 1361; 72 S. Ct. 369, 342 U.S. 928, 96 L. Ed. 691, the court again held that under the Act in question the facts must be stated to show that such a witness is both material and necessary. It is well settled in Florida that in order to secure a continuance upon the ground of the absence of a material witness, the applicant must state the *facts* to which such witness would testify, in order that the court may determine from the *facts* that the testimony of the absent witness is material and necessary. Harrell v. Durrance, 9 Fla. 490; Reynolds v. Smith, 49 Fla. 217, 38 So. 903. Tested by this rule, the certificate and the affidavit upon which this application is based fall far short of any showing that O'Neill is a "material and necessary witness" in any proceeding pending in New York. It is a safe rule that in any proceeding in which an application for the seizure of any person is sought, the application should state the *facts* upon which such application is based. Section 22 of the declaration of rights of the constitution of Florida guarantees the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and that no warrants shall be issued but upon probable cause supported by oath and affirmation. Warrants for the arrest of any person can only be issued in this state upon oath indicating a probable violation of the law. Section 901.02, Florida Statutes, 1955, 3 Fla. Jur., Arrest, pp. 48-49; Conrad v. Van Buren, Cir. Judge, 144 Mich. 492, 108 N.W. 347. Neither the affidavit, nor the certificate upon which this application is based set forth any *facts* from which it is made to appear that O'Neill is a "material and necessary witness," and in the absence of such a showing, this court is not authorized to issue any summons, or subpoena, and the mere statement of a conclusion that he is a material or necessary witness is insufficient. Application of Stamler, supra; State v. Blount, supra; State v. Fouquette, supra.

164

Upon consideration thereof, the court is of the opinion that the application of the People of the State of New York should be denied, and this proceeding dismissed. It is therefore considered, ordered and adjudged as follows—

That O'Neill's motion to quash and discharge the rule to show cause issued herein and directed to him is granted, the rule to show cause is quashed and discharged, and he is discharged from custody thereunder.

That O'Neill and the surety on his bond posted pursuant to the rule to show cause be, and they and each of them, are discharged of all liability thereunder.

That the attachment issued in this cause for the arrest of Joseph O'Neill described therein as Joseph C. O'Neill, is quashed and dismissed.

That the application of the People of the State of New York for an order requiring Joseph O'Neill to attend and testify before the grand jury of New York County, New York, is denied, and this proceeding dismissed, with prejudice and at the cost of the applicant.

## APPENDIX

(1) *People v. Parker* (Cir. Ct. N.J. 1936), 16 N.J. Misc. 471, 1 A. 2d 54. (2) *In re Cooper* (N.J. 1941), 127 N.J.L. 312, 22 A. 2d 532. (3) *In re Saperstein* (Superior Ct. App. Div. N.J. 1954), 30 N.J. Super. 373, 104 A. 2d 842, cert. den. 348 U.S. 874, 75 S. Ct. 110, 99 L. Ed. 688. (4) *U.S. v. Monjar* (C.C. A. 3. 1946), 154 F. 2d 954. (5) *Application of Stamler* (N.Y. 1952), 279 App. Div. 908, 111 N.Y. S. 2d 313. (6) *State v. Blount* (Ore. 1954), 200 Ore. 35, 264 P. 2d 419, cert. den. 347 U.S. 962, 74 S. Ct. 711, 98 L. Ed. 1105. (7) *State v. Fouquette* (Nev. 1950), 67 Nev. 505, 221 P. 2d 404, cert. den. 341 U.S. 932, 71 S. Ct. 799, 95 L. Ed. 1361; 342 U.S. 928, 72 S. Ct. 369, 98 L. Ed. 691. (8) *Vore v. State* (Neb. 1954), 158 Neb. 222, 63 N.W. 2d 141. (9) *People v. Simon* (Cal. Dist. Ct. of App. 1951), 107 Cal. App. 2d 105, 236 P. 2d 855, cert. den. 343 U.S. 911, 72 S. Ct. 645, 96 L. Ed. 1327. (10) *State ex rel Butler v. Swenson* (Minn. 1954), 66 N.W. 2d 1. (11) *In re Allen* (1940), 49 Pa. D. & C. 631.